FREDERICK MERRILL *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

COTTER, C. J., BOGDANSKI, LONGO, PETERS and PARSKEY, Js.

Argued March 15—decision released May 1, 1979

*Charles D. Gill,* public defender, for the appellant (plaintiff).

*Abbot B. Schwebel,* assistant state's attorney, for the appellee (defendant).

PER CURIAM. This habeas corpus petition focuses on a central issue which is dispositive of this appeal, namely, whether the failure of the state to disclose information affecting the credibility of a key witness in the petitioner's criminal trial denied him a fair trial. We hold that it did.

The plaintiff was convicted by a jury of attempted escape from the Connecticut Correctional Institution at Somers. After his conviction the plaintiff applied for review of his sentence by the Sentence Review Division of the Superior Court and he also filed an appeal to this court. Later he intentionally withdrew his appeal in order to facilitate a hearing which was subsequently held by the Sentence Review Division.[1]

---

[1] Although the trial court concluded that there might be a basis for dismissal of the plaintiff's petition under the deliberate bypass principle enunciated in *Blue* v. *Robinson,* 173 Conn. 360, 369, 377 A.2d 1108 (1977), it did not specifically find that the plaintiff had deliberately bypassed the orderly procedure of direct appeal in this case and in fact considered the petition on the merits. It was conceded at oral argument that at the time of the withdrawal of the appeal it was the policy of the Sentence Review Division not to review sentences in instances where the conviction was being challenged by direct appeal or collateral attack. In these circumstances we do not consider the applicability of *Blue* v. *Robinson,* supra, to the facts of this case.

A key witness for the state in the criminal trial was one Alpha Nims, a fellow inmate at Somers. Information had come to the deputy warden at Somers of a contemplated escape by Nims and others. Upon being interviewed by a state trooper Nims indicated that he was prepared to divulge information about the escape after consulting an attorney. After further contact with the trooper and with a Tolland County detective, both of whom believed that Nims was knowledgeable about the mechanism of the criminal justice system, Nims gave the trooper a written statement, in affidavit form, in which he implicated himself, the plaintiff and several others in the escape attempt. Thereafter, on July 14, 1972, and before the commencement of the trial, the state's attorney for Tolland County sent a letter[2] to the commissioner of correc-

[2] The state's attorney's letter read as follows:

"Honorable John R. Manson
Commissioner, Department of Corrections
State of Connecticut
340 Capitol Avenue
Hartford, Connecticut 06106

Dear Commissioner Manson:

At present there is an inmate named Alpha Nims serving a prison sentence at Windham Community Correctional Center. Mr. Nims has cooperated with this office on three different occasions. He is our main witness in the attempted escape cases of Merrill et als., also he has given us information concerning an instance involving movement of contraband into the prison.

In order to initially gain the cooperation of Mr. Nims, I committed myself to do what I could to facilitate his release on parole. After receiving this commitment from me, Mr. Nims continued to be cooperative. It was through information from him that a serious incident involving transportation of prisoners of Windham to Rockville was avoided. With his help, a weapon was discovered on one of the prisoners that was to be transported. Apparently the armed prisoner and the two others planned to attack the transporting officers en route to the Court House.

For the above reasons, I feel that Alpha Nims is due whatever

tion, with copies to the wardens at Somers and the correctional facility at Brooklyn and to the chairman of the board of parole, in which letter the state's attorney stated the nature of a commitment he had made to Nims and the extent of cooperation received from Nims. He further observed that for these reasons "Nims is due whatever consideration can possibly be afforded him." Following the receipt of the letter by the several officials, Nims received his first furlough.

At the trial Nims testified that he had discussed the case with the state's attorney but no promises were made to him at that time, that the only thing the state's attorney did for him was to send a letter to the parole board to make them aware of the incident, that he fully expected to serve his sentence of three to ten years and that the only reason he was testifying about the incident was because he was a public-spirited citizen who wished to see that justice was done. When measured against the contents of the state's attorney's letter Nims' testimony was patently false. The plaintiff's attorney at the criminal trial died before the hearing on the habeas petition. The state's attorney could not recall if the plaintiff's counsel ever asked to see a copy of his letter. In any event there is no record that the letter was received in evidence. Although the jury was fully aware that the state's attorney had informed the correctional authorities of Nims' participation in the incident the record is barren of any evidence that they were made aware of the content and nature of the state's attorney's commitment to Nims.

consideration can possibly be afforded him.

I will be happy to supply more information or details if you wish.

Very truly yours,
Donald B. Caldwell"

The constitutional principle applicable to this case is that a conviction based on the use of false evidence known to be such by representatives of the state cannot stand. *Mooney* v. *Holohan,* 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791 (1935); *Pyle* v. *Kansas,* 317 U.S. 213, 216, 63 S. Ct. 177, 87 L. Ed. 214 (1942). This principle applies when the state, although not soliciting false evidence, allows it to stand uncorrected when it appears; *Napue* v. *Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); and even though such evidence merely goes to the credibility of the witness. Id. The good faith of the prosecution in these circumstances is immaterial. *Giglio* v. *United States,* 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). A new trial is required if the false testimony could in any reasonable likelihood have influenced the jury. Id.; *Annunziato* v. *Manson,* 566 F.2d 410, 414 (2d Cir. 1977).

The fact that Nims was a key witness made his credibility crucial to the state's case. In assessing his credibility the jury were entitled to know that he was testifying under false colors. Such knowledge could have affected the result.

There is error, the judgment is set aside and the case is remanded with direction to grant the petition unless the state retries the plaintiff forthwith.