# STATE OF CONNECTICUT *v.* BERNARD BEWRY
## (8714)

FOTI, LANDAU and CRETELLA, Js.

Argued September 26—decision released December 17, 1991

*Susan A. Brown,* assistant public defender, with whom was *Kenneth W. Simon,* assistant public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom were *James E. Thomas,* senior assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of the crimes of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) in one case, and of the crimes of criminal attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and two counts of the crime of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) in the other case. The defendant claims (1) that the trial court improperly denied his motion for judgment of acquittal because the evidence presented was insufficient to allow the jury to find him guilty of criminal attempt to commit murder beyond a reasonable doubt, and (2) that the trial court improperly denied his motion for a new trial which he had based on the state's nondisclosure of exculpatory evidence and on the state's failure to correct the allegedly false testimony of one of its witnesses. We affirm the judgments of the trial court.

The jury could have reasonably found the following facts. The defendant went to a building on Charlotte Street in Hartford to confront several friends about rumors he had heard concerning his friends' sexual involvement with his girl friend. When the defendant attempted to speak to the occupants of the building, they refused to let him inside. The defendant then left,

obtained a semiautomatic handgun and returned to the Charlotte Street building.

This time, the defendant was allowed in and went to a second floor apartment. When he was approached by the people whom he had come to see, the defendant drew his gun. After words were exchanged, the defendant raised his gun and fired a shot that struck Errol McNeil in the head. McNeil died as a result of that injury.

The defendant then fired from close range at Glaister Gunter, wounding him in his left arm. Gunter ran out of the building to an adjoining parking lot and collapsed on the ground. The defendant approached Gunter and asked where he could find another person who had fled from the building when the first shot was fired. After Gunter told the defendant where that person could be found, Gunter asked whether the defendant was going to kill him. The defendant replied, "First, I'm going to rob you," and then shot him again from a distance of about one foot.[1] The bullet struck Gunter's arm inches from where it supported his head. As Gunter lay motionless, the defendant walked away and was heard to say, "You're dead, [expletive]."

The defendant first claims that because the evidence was insufficient to support his conviction for the attempted murder of Gunter, the trial court should not have denied his motion for judgment of acquittal. Specifically, he argues that no evidence was presented at trial from which the jury could have inferred the requisite specific intent to cause Gunter's death, as required by General Statutes §§ 53a-49 (a) (2) and 53a-54a (a).[2] We do not agree.

---

[1] Gunter testified that the defendant took his wallet immediately before firing the gun at him a second time. The jury acquitted the defendant of the charge of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2).

[2] General Statutes § 53a-49 (a) provides that in order to be guilty of an attempt to commit a crime, a person must have been "acting with the kind

" 'When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983). We then determine whether " 'the jury could have reasonably concluded upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Duhan,* 194 Conn. 347, 355, 481 A.2d 48 (1984).' *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987); *State* v. *Arnold,* 201 Conn. 276, 282, 514 A.2d 330 (1986). ' "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited.' *State* v. *Rollinson,* supra, 666." *State* v. *Carpenter,* 214 Conn. 77, 78–79, 570 A.2d 203 (1990).

The defendant contends that the evidence shows that, when he fired the gun at Gunter, he intended only to hurt him, not to kill him. Essentially, he argues that the evidence was not legally sufficient to convict him of the crime of attempted murder because he shot Gunter twice at close range, and could have killed him by shooting him in his head or chest if that was in fact his intent, but instead only wounded him in the arm.

of mental state required for commission of the crime . . . ." The mental state required by General Statutes § 53a-54a (a) for the crime of murder is an 'intent to cause the death of another person . . . ."

In addition, the defendant claims that Gunter's own testimony, to the effect that he did not believe that the defendant intended to kill him, corroborated his lack of intent to cause the death of Gunter.

" 'The intent of the actor is a question for the trier of fact, and the conclusion of the trier in this regard should stand unless it is an unreasonable one.' *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). Further, when the conclusion is one that is dependent on the resolution of conflicting testimony, it should ordinarily be left to the jury for its judgment. *State* v. *Torello,* 100 Conn. 637, 647–48, 124 A. 375 (1924)." *State* v. *Turner,* 24 Conn. App. 264, 268, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

"While it would have been permissible to infer from [the facts relied on by the defendant] that the defendant intended only to injure . . . [the victim], the evidence did not preclude the equally permissible inference that the defendant intended to kill the victim by shooting at him . . . as he lay on the ground [one foot] away." *State* v. *Montanez,* 219 Conn. 16, 21, 592 A.2d 149 (1991). The evidence taken in the light most favorable to sustaining the verdict indicates that the defendant aimed the gun at Gunter and pulled the trigger, causing the bullet to hit him in the arm inches from his head. The fact that the victim was not hit in a vital area of the body is not dispositive of the issue of intent to kill. Id. The proximity of the victim's head to the arm that was hit by the bullet is highly significant. Moreover, evidence was presented to the jury that showed that the defendant armed himself with a deadly weapon; *State* v. *Lopez,* 197 Conn. 337, 343, 497 A.2d 390 (1985); that, after initially shooting Gunter and causing him to retreat, the defendant exhibited little regard for Gunter's condition even though it was appar-

ent that he was injured; *State* v. *Chace,* 199 Conn. 102, 106, 505 A.2d 712 (1986); that the defendant threatened Gunter while brandishing a gun at close range; *State* v. *Washington,* 15 Conn. App. 704, 716, 546 A.2d 911 (1988); and that he fired the second shot from close range as his victim lay motionless on the ground; *State* v. *Montanez,* supra, 20; all of which can support an inference that the defendant intended to kill Gunter the second time he fired the gun at him. On the basis of this evidence, the jury reasonably could have concluded beyond a reasonable doubt that the defendant intended to cause Gunter's death.

The defendant next claims that the trial court improperly denied his motion for a new trial brought pursuant to Practice Book § 902. The defendant contends that the state violated his constitutional right to a fair trial by failing to disclose exculpatory information, as required by *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and by subsequently failing to notify the defendant of the information when the witness involved testified falsely.

The following additional facts are relevant to our consideration of this claim. During the defendant's trial, Detective Nicholas Russo testified that his address was 50 Jennings Road in Hartford, the location of the Hartford police department. Russo testified that he took a voluntary statement from the defendant in connection with the Charlotte Street incident. The defendant signed this statement. Russo also testified that the defendant was calm and cooperative during the interview and that he did not notice anything unusual about the defendant's emotional state that might have interfered with his ability to give an accurate statement. When the defendant took the stand, he testified that the statement was not accurate in certain very minor respects. He also testified that he was in pain at the

time he gave the statement, having just been released from the hospital after suffering a gunshot wound.

In a pretrial motion, the defendant had made the standard motion that the state provide him with "any record of felony convictions of the witnesses" whom the state intended to call at trial and "any record of felony or misdemeanor charges pending against the witnesses." Although the state argues that there was no suppression, no such information as to Russo was disclosed by the state.

The defendant later discovered that, in fact, at the time of his trial, Russo was under suspension from the Hartford police department due to the pendency of criminal action against him.[3] That case involved an allegation that Russo had illegally obtained a prescription drug. Russo was on accelerated rehabilitation for that charge at the time that he testified against the defendant. In his motion for a new trial, the defendant further alleged that "[u]pon information and belief said detective had a drug problem which may well have affected his perceptions on the evening he interrogated the defendant."

"Appellate review of the denial of a motion . . . for a new trial is limited to a determination of whether the trial court abused its discretion." *State* v. *Rothenberg,* 195 Conn. 253, 264, 487 A.2d 545 (1985); *State* v. *Thomas,* 210 Conn. 199, 213, 554 A.2d 1048 (1989). Because the defendant cannot meet his burden with respect to either claim of wrongdoing by the state, we conclude that the trial court did not abuse its discretion in denying the motion for a new trial.

---

[3] The defendant's Practice Book § 902 motion for a new trial which raised the issue of this undisclosed information was not filed within the five day period set forth in Practice Book § 903. The trial court did not deny the motion on this basis, and § 903 permits the trial court, in the interests of justice, to permit such a motion to be filed beyond the five day period.

With regard to his *Brady* claim, "the defendant bears the burden of demonstrating: '(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material.' *State* v. *Milner,* 206 Conn. 512, 539–40, 539 A.2d 80 (1988); *State* v. *Simms,* 201 Conn. 395, 405–406, 518 A.2d 35 (1986)." *Demers* v. *State,* 209 Conn. 143, 150, 547 A.2d 28 (1988). Although the information concerning Russo could arguably be classified as both "suppressed" and "favorable to the defense" within the meaning of *Brady;* see *Demers* v. *State,* supra, 150–54, 161; we nevertheless conclude that the undisclosed evidence did not meet the third prong of *Brady* because it was not material.

" 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *State* v. *Pollitt,* 205 Conn. 132, 142–43, 531 A.2d 125 (1987), quoting *United States* v. *Bagley,* 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). The defendant's claim is that a key issue for determination by the jury was a question of credibility, i.e., "[w]hich was accurate, the statement as recorded by Russo or the testimony of [the defendant]?" The defendant further argues that, "[h]ad Detective Russo's drug prosecution [and possible drug abuse problems] been disclosed, the jury would have been able to properly weigh his testimony and determine whether his rendition of the events and statement was credible and believable." This contention is not supported by the evidence introduced at trial. Only minor discrepancies existed between the defendant's version of the Charlotte Street incident as related in his statement to the police and his trial testimony to the jury concerning those events. In fact, several times during cross-

examination of the defendant, he maintained that the two versions were not really all that different. In addition, we note that, had any question been raised as to Russo's credibility or his ability properly to observe and recall the defendant's demeanor when he recorded the defendant's statement, the state had available to it the testimony of Detective Frank Craddock, who was present during most of the time the defendant made his statement to the police and who could have corroborated Russo's testimony regarding the defendant's condition at the time of the statement. Under these circumstances, we conclude that the state's failure to disclose the information concerning Russo's drug arrest and prosecution was not significant in any way.

With regard to the defendant's claim of the use of false testimony by the state, "[a] new trial is required if the false testimony could in any reasonable likelihood have influenced the jury." *Merrill* v. *Warden,* 177 Conn. 427, 431, 418 A.2d 74 (1979). We conclude that any impact of the allegedly false testimony was de minimus. Russo's testimony in issue was his address, given after he was placed under oath. Although his address might have suggested that he was an active member of the Hartford police department, none of his testimony in response to questioning by the state or defense counsel reinforced that suggestion. His answers to questions regarding general police procedures and the events surrounding the taking of the defendant's statement were framed in the past tense. More important, as noted above, since his credibility was not seriously put into dispute by the defendant's testimony and since his testimony could have been corroborated by Craddock, there is no likelihood that the false impression given by his testimony would have influenced the jury in reaching its verdict.

The judgments are affirmed.

In this opinion the other judges concurred.