SEAN ADAMS *v.* COMMISSIONER OF CORRECTION
(AC 31388)

DiPentima, C. J., and Robinson and Borden, Js.

Argued November 17, 2010—officially released May 3, 2011

*Damon A. R. Kirschbaum*, special public defender, for the appellant (petitioner).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*,

state's attorney, and *Linda N. Howe,* former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Sean Adams, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove that the state withheld impeachment evidence in violation of *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In addition, he asserts that he was deprived of a fair trial by the state's knowing use of false testimony. We reverse the judgment of the habeas court.

The facts surrounding the petitioner's underlying conviction were set forth by this court in *State* v. *Henry,* 72 Conn. App. 640, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002), a companion case to the petitioner's direct appeal. "At approximately 2 a.m. on December 14, 1996, [Darcus Henry] and three fellow members of a street gang, [the petitioner], Carlos Ashe and Johnny Johnson, went to a housing project in New Haven and fired with automatic or semiautomatic weapons at three unarmed members of a rival street gang. During the attack, [Henry] and his companions killed Jason Smith and seriously injured Marvin Ogman and Andre Clark. The motive for the attack was to avenge the murder of a former member of the [petitioner's] gang, Tyrese Jenkins, by members of the rival gang, one of whom was Clark's cousin." Id., 643.

The petitioner, Henry, Ashe and Johnson were arrested and charged in separate four count substitute informations with murder in violation of General Statutes §§ 53a-54a (a) and 53a-8 (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), and two counts of assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5)

and 53a-8 (a). The four individual cases subsequently were consolidated and tried jointly before a jury. Clark testified at the criminal trial, and he identified the petitioner as one of the individuals who had been involved in the shooting. The jury found the petitioner guilty of all four counts, and the trial court thereafter sentenced him to a total effective term of 100 years imprisonment. In the petitioner's direct appeal, this court affirmed the judgment. *State* v. *Adams*, 72 Conn. App. 734, 735–36, 806 A.2d 111 (2002). Our Supreme Court denied the petitioner's request for certification to appeal from that decision. *State* v. *Adams*, 262 Conn. 916, 811 A.2d 1292 (2002).

The following additional facts are relevant to our resolution of the present appeal. On December 16, 1998, Roger Dobris, an assistant state's attorney, filed two substitute informations, charging Clark with one count of carrying a pistol without a permit in violation of General Statutes § 29-35 and two counts of possession of narcotics with intent to sell in violation of General Statutes § 21a-277. On that same date, Clark pleaded guilty under the *Alford* doctrine[1] to all three charges. During the plea canvass, the trial court explained that if Clark were to receive the maximum sentence for all three charges, he would face up to thirty-five years imprisonment and $101,000 in fines. The court went on to explain, however, that the sentence would "be a cap of four years with a right to argue for less" and that "[t]he cap situation depend[ed] to a large extent on [Clark's] cooperation with the state." Neither the court nor Dobris indicated what had induced Clark to plead guilty. The court postponed the sentencing hearing until a later date.

Approximately eleven months after Clark had entered his guilty plea, James Clark, a senior assistant state's

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

attorney, called Clark as a witness at the petitioner's criminal trial.[2] During his testimony, Clark was cross-examined regarding his pending criminal charges. When asked whether the state had extended any offers of consideration to him in exchange for his testimony, Clark testified in the negative. Clark claimed that he had agreed to testify simply out of a desire for justice. When asked if he expected to receive the full sentence on his pending criminal charges, Clark testified that "you do the crime, you got to do the time, if they give me [the full sentence], they give me [the full sentence] . . . ." Neither Attorney Clark nor Clark disclosed to the petitioner, or to the trial court, that Clark had entered a guilty plea on the pending criminal charges. Moreover, Attorney Clark failed to disclose that the court had indicated that it would impose a sentence cap of four years, conditioned on Clark's cooperation with the state.

On September 14, 2001, approximately twenty-two months after Clark had testified at the petitioner's criminal trial, Clark's sentencing hearing was held. At the hearing, following the request of Dobris, the court vacated Clark's guilty plea with respect to the count of carrying a pistol without a permit and one count of possession of narcotics with intent to sell. The state entered a nolle prosequi on both charges. As to the one remaining charge of possession of narcotics with intent to sell, Dobris recommended that the court impose an unconditional discharge. After Dobris made a brief statement in support of his recommendation,[3] the court

---

[2] For purposes of clarity, we refer to James Clark as Attorney Clark and Andre Clark as Clark.

[3] Dobris' statement was as follows: "I should point out that Mr. Clark has testified [at] three trials that I know of in which he was a gunshot victim and also an eyewitness. He's being shown consideration for his truthful cooperation and testimony. In addition to that, the fact that he is on parole in the State of New York on an unrelated matter . . . . The New York authorities will be supervising him. It would be redundancy to have him supervised here in Connecticut and a waste of the [taxpayers'] money. In addition, he is working and seems to be—he's gotten married recently to

imposed an unconditional discharge as to the remaining charge.

On March 14, 2008, the petitioner filed an amended petition for a writ of habeas corpus, alleging that the state had withheld impeachment evidence by failing to disclose to the petitioner that it had agreed to favorably resolve pending criminal charges against Clark in exchange for his testimony against the petitioner.[4] The petitioner further alleged that, as a result of this undisclosed agreement, he had been deprived of a fair trial because the state had failed to correct Clark's testimony on cross-examination, in which he denied that he had received consideration in exchange for his testimony.

On April 15, 2008, the habeas court conducted an evidentiary hearing on the amended petition. Attorney Clark testified that, at the time of the petitioner's criminal trial, he was aware that criminal charges were pending against Clark and that Dobris was the state's attorney responsible for handling those charges. He maintained, however, that he had "intentionally set [himself] apart" from Clark's criminal case by telling Dobris that he "did not want to know what was going on," including whether Clark had made any agreements with the state. Dobris testified that he and Attorney Clark had constructed a "firewall" between one another, whereby neither one shared information regarding Clark or his involvement in the petitioner's

a young woman who has shown him a great deal of emotional and other support during the time that these cases were pending. I think I can honestly say this, that we won't be seeing him back here and I know I probably sound as though I were his defense lawyer but that's honestly and truly how I feel and how other members of my office feel about [Clark]. He's been enormously cooperative."

[4] In his amended petition for a writ of habeas corpus, the petitioner also alleged claims of actual conflict of interest on the part of his trial counsel and ineffective assistance of his trial and appellate counsel. On April 24, 2009, the petitioner withdrew these additional claims.

case.[5] Dobris admitted, however, that he had been present during some of Clark's testimony concerning the December 14, 1996 shooting.

On July 23, 2009, the court denied the amended petition. In its memorandum of decision, the court concluded that "even if it were presumed that the petitioner met the first two prongs of the *Brady* analysis, [his claim] must ultimately fail because the state's nondisclosure cannot be deemed material in the constitutional sense." The court granted the petitioner's petition for certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the court improperly concluded that he failed to prove that the state withheld impeachment evidence in violation of *Brady* v. *Maryland*, supra, 373 U.S. 87. Specifically, he argues that the court improperly concluded that the agreement between the state and Clark was not material evidence. In addition, the petitioner claims that he was deprived of a fair trial because Clark testified falsely on cross-examination that he had not been offered, nor was he expecting, any consideration in exchange for his testimony, and the state failed to contradict this false testimony. The petitioner argues that the state's failure to contradict this portion of Clark's testimony resulted in a violation of his constitutional rights under *Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) and *Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

The respondent, the commissioner of correction, counters by arguing that the record is inadequate to permit review of the petitioner's two claims because the habeas court did not make a specific factual finding regarding whether the state and Clark had an

---

[5] The respondent, commissioner of correction, conceded at oral argument before this court that "there shouldn't have been a [firewall] that was setup. That was wrong."

agreement, a necessary prerequisite for the petitioner's claims. Notwithstanding this argument, the respondent concedes that by failing to disclose that the trial court had indicated that it would impose a four year cap on Clark's sentence, the state allowed the jury to be presented with false and misleading testimony. Furthermore, the respondent admits that, even in the absence of an agreement, the state had an obligation to correct Clark's testimony.[6] The respondent argues, however, that there is not a reasonable likelihood that the state's failure to correct the testimony could have affected the verdict of the jury.

We begin by setting forth the standard of review. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

The respondent's concessions present us with a potential claim of error, which, if resolved in the petitioner's favor, will make it unnecessary to address the merits of the specific claims raised by the petitioner. Accordingly, we consider this claim first.[7]

---

[6] We commend the respondent for adhering to the duty of candor to this court. See Rules of Professional Conduct 3.3.

[7] Generally, this court has declined to consider whether the decision of the habeas court should be reversed when the alleged claim of error was raised by the *petitioner* for the first time on appeal. See, e.g., *Mercado* v. *Commissioner of Correction*, 85 Conn. App. 869, 871, 860 A.2d 270 (2004), cert. denied, 273 Conn. 908, 870 A.2d 1079 (2005). In the present case, however, the *respondent* has called our attention to the potential claim of

In *Brady* v. *Maryland,* supra, 373 U.S. 87, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "The . . . Court further explained and refined the rule set forth in *Brady* . . . in the case of *United States* v. *Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). There the [C]ourt identified three distinct situations to which the *Brady* rule might apply: (1) *those cases in which the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury* . . . (2) those cases, like *Brady* itself, in which the defendant has made a pretrial request for specific evidence . . . and (3) those cases in which the defendant has made no request for disclosure or has made only a general request for all exculpatory information. . . .

"Both *Brady* and *Agurs* unequivocally command that evidence that is favorable to the accused and that is material to the issue of guilt or punishment must be disclosed by the prosecution. The principal distinction among the paradigms set out in *Agurs* is the standard that is used to determine whether the undisclosed evidence is material in each instance. Where the prosecution employs perjured testimony (the first paradigm) the conviction must be set aside if there is *any reasonable likelihood* that the false testimony could have affected the judgment of the jury." (Citations omitted; emphasis added; internal quotation marks omitted.)

error. Therefore, because of these unusual circumstances, we will consider the claim. Cf. *Reid* v. *Commissioner of Correction,* 93 Conn. App. 95, 101 n.9, 887 A.2d 937 ("[i]t is well established that this court, absent unusual circumstances, declines to review claims not raised at trial"), cert. denied, 278 Conn. 921, 901 A.2d 1221 (2006).

*State* v. *Cohane*, 193 Conn. 474, 496, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); see also *Merrill* v. *Warden*, 177 Conn. 427, 431, 418 A.2d 74 (1979) ("[a] new trial is required if the false testimony could in any reasonable likelihood have influenced the jury"). "The references in *Agurs* to 'perjured' testimony must be taken to include testimony known to the state's attorney to be *false or misleading* even if the witness may not have such an awareness." (Emphasis added.) *State* v. *Cohane*, supra, 498.

In the present case, the testimony at issue is Clark's statement regarding the sentence he expected to receive for his pending criminal charges. The respondent does not contest that the testimony was misleading and does not contend that the state, through both Attorney Clark and Dobris, was unaware, or could not have known, of its misleading nature. Therefore, we are left to determine whether there is any reasonable likelihood that the testimony could have affected the judgment of the jury. We conclude that there is.

To determine the affect that the misleading testimony may have had on the jury, we must consider it in connection with certain other testimony provided by Clark. At the petitioner's criminal trial, Clark testified that he had told the police shortly after the shooting had occurred that he could not identify the individuals who had shot him. He explained that he eventually decided to identify the individuals who had been involved in the shooting because he did not want his family to have to suffer anymore and he wanted revenge. During cross-examination, Clark admitted that the first time he discussed the details of the shooting with the police and indentified the individuals who had been involved occurred on March 3, 1999, approximately three months after he had entered the guilty plea. When the timing of Clark's identification to the police is considered along with the court's statement that the sentence cap "depend[ed] to

a large extent on [Clark's] cooperation with the state," it reveals that Clark may well have had another reason for discussing the shooting with the police and for identifying the petitioner as one of the individuals involved.

Furthermore, Clark testified that his primary motivation for testifying at the petitioner's criminal trial was to seek justice. At the time of the trial, however, sentencing on his guilty plea was still pending before the court. Because his sentence depended on his cooperation with the state, Clark had another possible motivation for testifying against the petitioner and for identifying him as a shooter, other than the one he provided. Therefore, we conclude that, because the information regarding Clark's sentencing related to his credibility, there is a reasonable likelihood that the jury would have found that there was a reasonable doubt that the petitioner was involved in the December 14, 1996 shooting. Accordingly, because the jury was not provided with this information, we conclude that there is a reasonable likelihood that Clark's misleading testimony could have affected the judgment of the jury. See *Merrill* v. *Warden,* supra, 177 Conn. 431 (concluding that information tending to establish that witness was "testifying under false colors" was "knowledge [that] could have affected the result").

The judgment is reversed and the case is remanded with direction to render judgment granting the amended petition for a writ of habeas corpus and for further proceedings in accordance with law.

In this opinion the other judges concurred.