STATE OF CONNECTICUT *v.* BRUCE E. RODGERS
(13062)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

*(One justice dissenting)*
Argued February 2—decision released May 31, 1988

*Denise Dishongh,* special public defender, with whom was *Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Christopher Malany,* deputy assistant state's attorney, and *Peter D. Markle,* former assistant state's attorney, for the appellee (state).

COVELLO, J. The defendant, Bruce E. Rodgers, appeals, after a jury trial, from a judgment of conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a)[1] and attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a.[2] The judgment appealed from was rendered

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

[2] General Statutes § 53a-49 (a) (2) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required

following the defendant's second trial on these charges, pursuant to our reversal of his prior conviction and order for a new trial. *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985). The defendant claims that: (1) the trial court erred in admitting testimony under the constancy of accusation exception to the hearsay rule; (2) the trial court erred in allowing expert testimony on the issue of penetration; (3) the prosecutor committed reversible error in his argument to the jury; and (4) there was insufficient evidence to support his convictions. We find no reversible error.

The jury could reasonably have found that, during the evening of August 14, 1980, the defendant agreed to give the victim a ride home in his car, after visiting several bars together. The victim, a fifteen year old female, fell asleep during the ride. She awoke in the car to find the defendant with his hands around her throat, choking her. She thereafter lost consciousness. When the victim regained consciousness, she was alone on the ground in a rocky area that appeared to be a dump. Her neck and rectum were very sore, and her shoes and underpants had been removed and were on the ground nearby. The victim hitchhiked home, arriving at approximately 5:30 a.m., August 15, 1980. She slept throughout much of the day. Thereafter, friends took her to the hospital at approximately 9 p.m. that evening.

Medical experts testified that the victim had sustained a permanent injury to her third cervical vertebra, more commonly known as a broken neck. The

for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-54a provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person. . . ."

injury was consistent with manual strangulation, and was further evidenced by the victim's bruised and bloodshot eyes. Further medical testimony revealed that the victim had sustained a midline fissure in the area between her vagina and anus, which extended into the anus. The injury was consistent with rape by rectal penetration.

I

The defendant claims on appeal that the trial court erred in permitting Detective Howard Jones of the Waterbury police department to testify to the details of the incident as related to him by the victim. The court admitted this testimony, over the defendant's objection, under the "constancy of accusation" exception to the hearsay rule.

"This court has recently reaffirmed the traditional rule in this jurisdiction that a witness to whom the victim of a sex-related offense has complained may testify not only to the fact that the complaint had been made but also to its details." *State* v. *Pollitt,* 205 Conn. 61, 76, 530 A.2d 155 (1987). Such testimony is permitted, under this evidentiary rule, to corroborate the victim's prior in-court testimony concerning the facts of the alleged sexual offense and "to show constancy in the victim's declarations." Id.; *State* v. *Dabkowski,* 199 Conn. 193, 199, 506 A.2d 118 (1986).

The defendant claims that this exception is inapplicable in the present case because the victim did not directly and expressly testify to the acts perpetrated on her that constituted the sexual assault. Having been strangled to the point of unconsciousness prior to the alleged sexual attack, the victim was able to testify only to the strangulation and to her experience upon regaining consciousness. Specifically, the victim testified that she fell asleep while riding in the defendant's car with him, that she awoke to find the defendant with his

hands around her throat, choking her, and that she eventually lost consciousness. When she regained consciousness she was alone on the ground in an area that appeared to be a dump. Her underpants had been removed and were on the ground nearby, and she was experiencing severe pain in her rectum.

The victim's testimony was necessarily limited to a recital of the facts as she experienced them prior to and immediately after her period of unconsciousness. Her inability to describe the events occurring during the interval of unconsciousness, and her concomitant inability, therefore, to articulate a formal accusation of a sexual assault would, according to the defendant's rationale, deprive the state of the right to present corroborative testimony of what she told others under the constancy of accusation rule. Such a policy would confer a benefit on defendants who render their victims unconscious during sexual assaults, and this act would thereby deprive the state of the ability to present constancy of accusation evidence as to the circumstances surrounding an alleged sexual assault.

Our review of the victim's testimony convinces us that she did present strong circumstantial evidence that she had been the victim of a sexual assault. "The law makes no distinction as to the probative effect of direct and circumstantial evidence." *State* v. *Rodgers,* supra, 58. We conclude that the victim's testimony as to the facts of this alleged incident created a strong inference that she had been the victim of a recent sexual assault. Therefore, the trial court properly permitted the introduction of her statements to Detective Jones, even though there was no direct testimony by her of the assault itself.

## II

The defendant next claims that the trial court erred in allowing expert testimony on an essential element

of the crime that was properly an issue for the jury's determination. An obstetrician-gynecologist who examined the victim when she was taken to the hospital was allowed to testify, over the defendant's objection, to his opinion as to the cause of the victim's injury. The doctor testified that the fissure suffered by the victim was probably caused by a sharp or quick blow to the rectum and was consistent with rape by rectal penetration. During cross-examination, the doctor conceded that it was possible for such an injury to occur other than by penetration, such as by falling forcefully on a sharp rock or against a small, sharp table corner.

"There is no doubt that penetration is an element of the crime of sexual assault in the first degree . . . ." *State* v. *Artis,* 198 Conn. 617, 621, 503 A.2d 1181 (1986); see General Statutes § 53a-65 (2). Whether penetration did occur is a question of fact for the jury, and the state is required to establish penetration beyond a reasonable doubt. *State* v. *Artis,* supra.

As to the admissibility of the doctor's expert opinion on this issue, "[t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." Id. The doctor's opinion testimony readily meets this test. First, as a specialist in obstetrics and gynecology, he possessed a knowledge and skill directly relevant to the anatomical area of the injury. Second, the probable cause of a perineal fissure is not obvious as a matter within the common knowledge of the average person. Expert testimony as to the degree of force and the nature of the object required to bring about such

a fissure assisted the jury in intelligently assessing the ultimate issue as to whether a sexual assault had occurred. This is precisely the evidentiary circumstance in which we have recently reaffirmed that experts can " 'give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass. *State* v. *Johnson,* 140 Conn. 560, 563, 102 A.2d 359 (1954). *Geraty* v. *Kaufman,* 115 Conn. 563, 572, 162 A. 33 (1932). . . .' " *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988).

Further, the doctor's testimony that the injury was consistent with rape by rectal penetration did not usurp the factfinding function of the jury. See *State* v. *Kemp,* supra, 477–78. Although the doctor expressed his opinion as to the most likely cause of the victim's injury, he also testified on cross-examination that the medical evidence did not conclusively establish that rape by rectal penetration had occurred. Moreover, he conceded that the injury could have been inflicted as a result of falling or being thrown forcefully against a small hard object such as a rock or table corner. Thus, it was left to the jury to determine whether penetration had indeed occurred; General Statutes § 53a-65 (2); whether it had been achieved by the use of force or the threat of the use of force; General Statutes § 53a-70; and whether the defendant was the perpetrator.

We conclude, therefore, that the doctor's testimony was admissible as expert opinion testimony, that it did not invade the province of the jury to determine the ultimate issue and that the trial court properly admitted the challenged testimony.

## III

The defendant next claims that the prosecutor's argument to the jury constituted misconduct and deprived him of his right to a fair trial. Specifically, the defend-

ant claims that the prosecutor: (1) expressed his personal opinion as to the defendant's guilt; (2) expressed his personal opinion as to the victim's truthfulness; and (3) appealed to the jury's sympathy for the victim.

The state argues that the defendant's claim is not reviewable because it has not been properly preserved for appellate review. We agree.

The defendant "took none of the appropriate measures to alert the trial court to a potential problem . . . ." *State* v. *Williams,* 204 Conn. 523, 535, 529 A.2d 653 (1987). At trial, the defendant did not object to the remarks now complained of nor did he move for a mistrial on the basis of these remarks. The defendant concedes that this claim was not properly preserved for appeal, but nonetheless seeks review of this issue under the "exceptional circumstances" doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973),[3] or the "plain error" rule of Practice Book § 4185.[4]

The defendant relies on a line of cases where we have reviewed claims of prosecutorial misconduct under *State* v. *Evans,* supra. In those cases where we have engaged in *Evans* review, the record has disclosed a pattern of repeated, strident and serious misconduct.[5] "In the cases in which we have denied *Evans* review, the claimed misconduct consisted of isolated and brief

[3] "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973).

[4] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

[5] In *State* v. *Williams,* 204 Conn. 523, 544 n.7, 546, 529 A.2d 653 (1987), the assistant state's attorney referred to the defendant in a child abuse case as a "savage," "baby-beater," "infant-thrasher," and "drunken drug-user, convicted felon, child beater." These quotations are only examples

episodes, and did not reveal a pattern of conduct repeated throughout the trial. Moreover, the misconduct was not blatantly egregious." *State* v. *Williams,* supra, 537; see *State* v. *Chace,* 199 Conn. 102, 107–108, 505 A.2d 712 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672–74, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Lubesky,* 195 Conn. 475, 483–84, 488 A.2d 1239 (1985).

The record in this case does not adequately support a claim of a clear deprivation of the right to a fair trial. The challenged remarks[6] did not rise to the level of character assassination and vitriolic personal attacks that we have held to constitute a denial of the constitutional due process right to a fair trial. We conclude, therefore, that the remarks of the prosecutor as set forth in the record do not constitute the "exceptional circumstance" contemplated in *State* v. *Evans* to warrant review of these unpreserved claims. For similar reasons, we conclude that these remarks do not warrant review as plain error.

of the misconduct. Flagrant, severe misconduct in this vein occurred throughout the cross-examination and closing arguments in this case. Id., 541–44 n.7.

In *State* v. *Pelletier,* 196 Conn. 32, 490 A.2d 515 (1985), a companion case to *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), the prosecutor's summation included repeated references to one or both of the defendants as "despicable coward[s]," "murderous fiends," "rats," "utterly merciless killers," and "inhumane, unfeeling and reprehensible creatures." *State* v. *Couture,* supra, 561 and n.17.

[6] The following is a sampling of the challenged remarks, characterized by the defendant as: (1) the prosecutor's expression of his personal opinion of the defendant's guilt: "[the victim] and the facts point to the defendant's guilt because he is guilty and for no other reason"; "The proof in this case and everyone in this case points to the defendant, the fact that the defendant is guilty for the sole reason that the defendant is, in fact, guilty"; "So, we know, from those facts, proven beyond a reasonable doubt, that the defendant is, in fact, guilty of sexual assault in the first degree . . . "; "I think the evidence is overwhelming that the defendant is guilty of both

## IV

The defendant's final claim is that the evidence presented at trial was legally insufficient to support his convictions. This claim includes two separate challenges: (1) that the evidence of penetration was insufficient to sustain his conviction of sexual assault in the first degree; and (2) that under the facts of this case, the same use of force could not form the basis of charges of both first degree sexual assault and attempted murder.

The defendant presented both of these claims in his appeal of his first convictions. *State* v. *Rodgers,* supra, 60–67. We reviewed both of these claimed errors at that time and decided both of them against the defendant. Id. As to the first issue, the defendant contends that our prior holding is not dispositive of this appeal. The defendant asserts that the expert testimony on the issue of penetration presented in his second trial "was very different" from that presented at his first trial. Our review of the record convinces us otherwise. The same experts, a gynecologist and a forensic toxicolo-

of these counts"; (2) the prosecutor's expression of his personal opinion of the victim's truthfulness: "And, there was no coloring of the truth by [the victim]. You look at the photographs of her and you will see that there is no doubt and based on the doctor's testimony, that she suffered a horrendous attack at the hands of this defendant"; (3) an appeal to the jury's sympathy for the victim: "She was in a state of shock after going through what the defendant put her through. She wanted the security of her own house. She crawled into bed, were her own words exactly, the feeling that we all know after having a horrendous night. Fortunately, none of us have ever had a night like [the victim] because of this defendant. But, we all can sympathize with that kind of a feeling, after having a bad day or night, you do just want to be home, away from strangers, by yourself, you want to be in the security of your own bed. And, you hope, even though you know it's not going to come true, that the injuries will go away, that the night was not real, it just didn't happen. But, you know, [the victim] knows and everyone in this case confirmed that these acts did occur and that they were, in fact, perpetrated by this defendant, Bruce Rodgers."

gist, testified at both trials. While they did not present a verbatim reiteration of their previous testimony, the material elements of their testimony at the first and second trials were essentially the same. We conclude, therefore, that our resolution of the sufficiency of the evidence claim in the defendant's earlier appeal disposes of the claim here as well.

The second aspect of this claim stems from the unique factual circumstances of this case. The defendant contends that the same application of force cannot be relied on to support convictions for *both* attempted murder and sexual assault. The defendant bases this claim on his assertion that he could not simultaneously have possessed the requisite intent to kill his victim and also to compel her to submit to sexual intercourse.

We first observe that the defendant did not raise this claim at trial. The defendant argues that this issue was "brought to the attention of the trial court at sentencing," but, recognizing that this is insufficient to preserve the claim for substantive appellate review, seeks review instead under the "exceptional circumstances" doctrine of *State* v. *Evans.*

Even were we to grant the review the defendant seeks, our resolution would be governed by our prior ruling in *State* v. *Rodgers,* supra. The defendant raised this identical issue in his earlier appeal, and we stated: "Even if we were to accept the defendant's argument that in strangling his victim he could not simultaneously have intended to commit both murder and sexual assault in the first degree, he would not prevail. On the facts of this case, it was not necessary that the defendant intended to sexually assault his victim as he strangled her. It is enough that after having caused her to lose consciousness by breaking her neck, he did commit the sexual assault. We conclude that the trial court properly refused to instruct the jury that the defend-

ant could not be found guilty of both attempted murder and sexual assault in the first degree." Id., 63. The "logic of *Rodgers*" was recently reaffirmed in *State* v. *Usry*, 205 Conn 298, 317, 533 A.2d 212 (1987). The defendant concedes that guilt of both offenses arising from a single act of force is "established law" in this state, but asks us to speculate about the legal effect of other, distinctly different hypothetical circumstances. This we decline to do.

There is no error.

In this opinion, PETERS, C. J., and CALLAHAN, J., concurred.

ARTHUR H. HEALEY, J., dissenting in part. I disagree with part I of the opinion and would order a new trial on the charge of sexual assault in the first degree.[1] See General Statutes § 53a-70 (a).

The defendant's claim on the issue raised in part I is that the trial court "erred in allowing [the] 'constancy of accusation' testimony in this case where the alleged victim of the sexual assault had no personal knowledge whatsoever of the alleged sexual assault and did not in fact ever make any accusations of sexual assault."

There appears to be no real question about the following evidence. On the night of the alleged attack, the victim performed as a dancer at a stag party to which she had been taken by her employer, his wife and another man. After that party, she went to a bar in Plymouth with her employer, his wife and the other man. In that bar, she had several drinks with the

---

[1] The defendant was convicted not only of the crime of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) but also of the crime of attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a). He was sentenced to a term of ten to twenty years on each count to be served consecutively for an effective sentence of imprisonment of not less than twenty years and not more than forty years.

defendant whom she said she had not previously met. About one hour later, she and the defendant left to go to a bar in Southington where they had some more drinks. At closing time, they left that bar as the defendant had offered to give her a ride home. Because it was raining and the pair had been using the defendant's motorcycle for transportation, they stopped by the defendant's home to get his car. As the victim was riding in the front seat of the defendant's car, she fell asleep while leaning against the defendant.

The next thing the victim said that she remembered was that she had been awakened by the defendant strangling her and that the defendant had asked her where her friends were and how were they going to help her. She then lost consciousness. When she awoke later, she found herself outside somewhere, alone. Her neck and rectum were very sore. She found her shoes, purse and underwear a few feet away. She put her underwear back on and then tried to find help and find her way home.

Although she saw two individuals walking by, she did not tell them what had happened but did ask them for directions. She hitchhiked a ride, told the unidentified driver what had happened and she received a ride home.

Upon ariving home at 5:30 a.m., she removed her clothes and went to bed. She did not think to go to the hospital, she did not bathe or shower and she did not think to awaken her roommate to tell her what had happened. Upon awakening at about 11 a.m., she talked to her roommate but did not tell her what had happened at that point. She went back to sleep and awoke later in the afternoon. When she awoke again, her roommate's brother was there and he asked her what had happened when he saw her "injuries." She told him and went back to sleep again. She awoke again about dinner time, and her roommate, who was there, said they

were going to the hospital. They went to the hospital about 9 p.m. Upon her arrival at the hospital, she gave a false name and an incorrect age.

At the hospital, she told the people there what had happened to her. She testified at trial that she never told the people at the hospital or anyone else that she had been sexually assaulted. She also testified that she had no personal knowledge of whether she had been sexually assaulted or what caused her rectal pain. While in the hospital, the police interviewed the victim three times over a two day period. Detective Howard Jones was the officer who had interviewed the victim those three times in the hospital and who took her written statement.

The state presented the testimony of three doctors at the trial. One was an orthopedic surgeon whose testimony did not involve the alleged sexual assault but dealt with her strangulation. Another was a gynecologist who had examined her in the emergency room. During his rectal examination, he discovered a fissure about one half centimeter deep and three and one-half centimeters long which extended for about one centimeter into the anus. He testified that in his opinion the fissure would "probably come from a very sharp or rather quick punch or blow" and that the injury was consistent with rape, specifically with rectal penetration. The third doctor was a neurosurgeon who had not examined the victim but who had reviewed her medical records. His testimony concerned her neck injury and did not concern the alleged sexual assault.

Detective Jones testified for the state and his testimony was allowed over objection on the ground that it was admissible specifically on the constancy of accusation exception. His testimony included the details stated to him by the victim during each of his three interviews with her.

The state's brief states that "[t]he defendant correctly notes that the victim did not expressly accuse the defendant of 'sexual assault.' Nor was she able to testify that she saw the defendant as he sexually assaulted her. Having been choked to unconsciousness by the defendant prior to being sexually assaulted, the victim could hardly have made such an accusation or provided such testimony. This only means that the victim's testimony contained no direct evidence of sexual assault." It argues that the evidence compels the inference that she was the victim of a sex-related offense and it should not matter that she was unable to provide direct, personal knowledge of the sexual assault where there was compelling circumstantial evidence of its occurrence. It then correctly points out the general rule that the law makes no distinction as to the probative effect of circumstantial as opposed to direct evidence.

To accept the defendant's claim of error here, the state argues, would mean that victims of sexual assault, who are rendered unconscious just prior to the offensive act, could never utilize the constancy of accusation exception to rebut the suggestion of recent fabrication. In my view, the trial court erred when it admitted this testimony in this case under the constancy of accusation exception to the hearsay rule.

"In sex-related crime cases, we have long recognized that a witness, to whom a victim has complained of the offense, could testify 'not only to the fact that a complaint was made but also to its details.' *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945). See *State* v. *Greene,* 161 Conn. 291, 294, 287 A.2d 386 (1971); *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971); *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969); *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 (1946); *State* v. *Orlando,* 115

Conn. 672, 677, 163 A. 256 (1932); *State* v. *Sebastian,* 81 Conn. 1, 5, 69 A. 1054 (1908); *State* v. *Byrne,* 47 Conn. 465, 466 (1880); *State* v. *Kinney,* 44 Conn. 153, 155–57 (1876); *State* v. *De Wolf,* 8 Conn. 93, 99 (1830). 'Such testimony is admitted . . . when the complainant first has testified, in court, to the facts of the alleged occurrence, in order to corroborate her testimony. *State* v. *Orlando,* supra, [677]. She is then permitted to state that she made complaint to some other person. Thereupon, the person to whom she complained, out of court and in the absence of the defendant is permitted to testify . . . .' *State* v. *Segerberg,* supra, 549. The corroborating statements are 'received to shew [sic] *constancy* in the declarations of the witness.' (Emphasis in original.) *State* v. *De Wolf,* supra, 100; see *State* v. *Orlando,* supra. 'It is manifest that the rule of "constancy of accusation" applies only when the complainant has testified.' *State* v. *Segerberg,* supra, 549." *State* v. *Brice,* 186 Conn. 449, 453–54, 442 A.2d 906 (1982); see *State* v. *Ouellette,* 190 Conn. 84, 92–93, 459 A.2d 1005 (1983). As our previous opinions indicate, the reason for permitting such statements to come into evidence has been rationalized as follows: " ' "If a female testifies that such an outrage has been committed on her person, an enquiry is, at once, suggested, why it was not communicated to her . . . friends. To satisfy such inquiry, it is reasonable that she should be heard in her declarations, that she did so communicate it . . . . [S]uch a course [of conduct] would be natural if the crime had been committed, but very unnatural if it had not been." ' (Citations omitted.)" *State* v. *Ouellette,* supra, 99, quoting *State* v. *Segerberg,* supra.

In this case, the victim never complained to anyone of being sexually assaulted and she did not so testify. It was therefore error to admit, in contravention of our decided cases, this testimony on the ground of constancy of accusation. Moreover, to do so in this case

was reversible error, not only because of its admission, but also because such inadmissible evidence greatly strengthened her credibility which was critical. Despite evidence that others had seen the defendant with the victim in the bars referred to, she was the only person whose testimony suggested that the defendant was the one who sexually assaulted her. When she first testified in this case in 1982, she acknowledged that she had criminal charges pending against her for carrying a dangerous weapon and attempted larceny; she conceded that both of these charges had been nolled about two weeks after she had testified in the earlier proceeding.

I disagree with the majority's view that this victim's inability to describe the events that occurred during the interval of her unconsciousness and her concomitant inability "to articulate a formal accusation" would, if the defendant's claim prevailed, "deprive the state of the right to present corroborative testimony." The majority goes on to state: "Such a policy would confer a benefit on defendants who render their victims unconscious during sexual assaults, and this act would thereby deprive the state of the ability to present constancy of accusation evidence as to the circumstances surrounding an alleged sexual assault." I cannot accept this position of the majority. What *testimony* of the victim as to the outrage allegedly committed upon her by this defendant, which is the predicate of our constancy of accusation rule under our decisions, is there in this case? The majority points to none because there is none. Next, with reference to the "policy" that we would be announcing, it seems to me that the state has no right to submit any such evidence under this exception unless we are henceforth assuming that where such a victim cannot *testify* so as to lay the foundation for the constancy exception, such evidence will come in accordance with the revision of the constancy rule announced

today. The charged crime of sexual assault in the first degree is a heinous, outrageous and degrading offense. But to justify upholding the conviction on this charge in this case against the defendant's challenge to it on the constancy of accusation ground batters home the aphorism that hard cases made bad law. I fully understand that the constitution guarantees a fair trial and not a perfect trial. See *United States* v. *Hasting,* 461 U.S. 499, 508–509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). I agree with the defendant that insofar as the sexual assault charge is concerned, this guarantee did not occur.

Therefore, I dissent and would order a new trial only on the charge of sexual assault in the first degree.

SHEA, J., dissenting in part. Although I agree with the remainder of the opinion, I disagree with the view of the majority expressed in the second portion of part IV of the opinion that the evidence in this case was sufficient to sustain the defendant's conviction for both attempted murder and first degree sexual assault.

The failure of the defendant seasonably to raise his claim of insufficiency does not preclude review pursuant to *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because we have held that such a claim involves a fundamental constitutional right and, therefore, falls within the exception. *State* v. *Maselli,* 182 Conn. 66, 70, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981).

On the merits of the claim, I continue to adhere to the belief that a defendant who uses force upon a victim for the purpose of murdering her, as required for attempted murder, cannot concurrently intend to use such force in order to compel the victim to have sexual intercourse with him as required for first degree sexual assault. "A person who renders his victim uncon-

scious and then has sexual intercourse with her in that condition commits sexual assault in the first degree, provided that he had such a purpose in mind at the time he was using force on the victim. He would have then compelled 'another person to engage in sexual intercourse by the use of force against such other person' in violation of General Statutes § 53a-70. If the use of force was with the intention of killing the victim, however, as required for a conviction of attempted murder under General Statutes §§ 53a-49 and 53a-54a, the actor could not simultaneously have harbored the purpose of having intercourse with a living victim, as is essential for first degree sexual assault. The concurrent intention he might have entertained could have been only to have sexual contact with a dead body, involving the crime of sexual assault in the fourth degree. General Statutes § 53a-73a (a) (3). In this case, therefore, the jury could not reasonably have found that the defendant, while he was using force, intended both to kill the victim and to have intercourse with her while she was alive, given the sequence that the sexual assault followed the attempt to murder, as the evidence unquestionably established." *State* v. *Rodgers,* 198 Conn. 53, 67–68, 502 A.2d 360 (1985) (*Shea, J.,* dissenting).

*State* v. *Usry,* 205 Conn. 298, 533 A.2d 212 (1987), upon which the majority opinion relies, is distinguishable because there the defendant was convicted of capital felony by virtue of "murder committed in the course of the commission of sexual assault in the first degree" in violation of General Statutes § 53a-54b (7), felony murder "when . . . he commit[ed] . . . sexual assault in the first degree . . . and, in the course of and in furtherance of such crime or of flight therefrom, he . . . cause[d] the death of a person" in violation of General Statutes § 53a-54c, and murder "when, with intent to cause the death of another person, he cause[d] the

665

death of such person" in violation of General Statutes § 53a-54a. With respect to the defendant's claim in that case that the jury should have been instructed that, if the victim was dead before sexual intercourse occurred, the predicate offense of sexual assault in the first degree would not have been committed, this court held that the trial court properly refused such an instruction. I agree with that holding because "[a] person who renders his victim unconscious [or dead] and then has sexual intercourse with her in that condition commits sexual assault in the first degree, *provided that he had such a purpose in mind at the time he was using force on the victim."* (Emphasis added.) *State* v. *Rodgers,* supra, 67. The request in *Usry* was properly refused, therefore, because it did not relate to the intention of the defendant in using force upon the victim but only to the sequence of the sexual assault and her death.

In the present case the evidence that the defendant choked the victim until she became unconscious with the intention of murdering her, as the jury found, is consistent only with an intention to have intercourse with her dead body, constituting the crime of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (3).

Accordingly, I dissent from the portion of the judgment convicting the defendant of sexual assault in the first degree.