STATE OF CONNECTICUT *v.* STEPHEN P. BATTISTA
(10999)

DALY, O'CONNELL and FREEDMAN, Js.

Argued February 16—decision released June 1, 1993

*Otto P. Witt,* for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Steven Preleski,* assistant state's attorney for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of sexual assault in a spousal or cohabiting relationship in violation of General Statutes § 53a-70b, unlawful restraint in the second degree in violation of General Statutes § 53a-96, reckless endangerment in the second degree in violation of General Statutes § 53a-64, and threatening in violation of General Statutes § 53a-62.

The defendant claims that (1) the evidence was insufficient to sustain the guilty verdicts, (2) General Statutes § 53a-70b, sexual assault in a spousal or cohabiting relationship, is unconstitutionally vague, (3) the prosecutor's summation amounted to prosecutorial misconduct, (4) he was deprived of his right to effective assistance of counsel at trial, (5) the trial court improperly admitted expert testimony regarding battered women's syndrome, and (6) the trial court improperly admitted the testimony of the victim's father because it was unduly prejudicial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim were married on August 28, 1987, and resided in the defendant's condominium in Plainville. The victim had two children by a prior marriage: one daughter who was ten years old at the time of trial, and another daughter who was eight years old at the time of trial. The defendant adopted both girls in 1988. A son was born to the couple on February 16, 1989. The defendant worked at two jobs until he quit one to open his own landscaping business in 1989. In 1990, the domestic situation became volatile. During this year, the defendant ordered the victim and their children out of the condominium on approximately five occasions.

One such incident occurred when the victim and her daughters were boiling eggs for Easter and the defendant came home and started harassing the children. The victim defended the children and the defendant ordered them to leave but would not let them take anything with them, including the checkbook. When the defendant placed the victim's neck in a choke hold, she bit him on the arm, told the girls to go to the car, took the baby and left the condominium. The victim and her children stayed at a hotel for a week and then stayed at her aunt's house. During this time, the victim contacted an outreach advocate.[1] She also called the police but, after being told that she also could be arrested, the victim decided not to pursue the complaint. Meanwhile, the defendant was phoning the victim every day at work promising that they would resolve their difficulties. Thereafter, she and the children returned to the condominium.

---

[1] The outreach advocate described her duties as follows: "As the outreach advocate, I do individual counseling, crisis counseling, support groups, legal advocacy, advocacy for medical purposes, housing and community education."

In August, 1990, the victim and the children were again ordered out of the condominium by the defendant because the victim had paid $50 to find out if her credit application for a new car would be approved. The victim expressed her desire to return later the same day, and her parents escorted her back to the condominium. The defendant and the victim's parents argued. The victim's parents left, but the victim decided to stay.

The charges stem from two incidents that occurred on September 21 and October 3, 1990. On September 21, the victim was sitting in the living room watching television when the defendant returned home from a stag party between 10 and 11 p.m. She was annoyed because she had not known that the defendant would be attending a stag party that evening. After an argument, the defendant left the condominium and returned an hour later. The defendant made sexual advances, and, when the victim refused to remove her clothing, he threw her to the floor and threatened to break her legs. The victim resisted in vain as the defendant forced her to have sexual intercourse with him. Their older daughter was in the process of going downstairs to get a glass of water when she saw the defendant on top of her mother, hitting her and pulling her clothes off. The victim and the three children remained in the condominium after this incident. The victim testified that she did not report the incident to the police immediately because she was afraid the defendant would kill her and because she was ashamed. The following Monday, the older daughter came home from school with a note from the school social worker who wanted to meet with the victim because the daughter had written in her creative writing journal, "my daddy beats my mommy up." The victim met with the school social worker that Friday.

On October 3, 1990, the defendant returned from work at approximately 9 p.m. When the victim told the defendant she had ordered a newspaper at a special price, the defendant became enraged, and cursed the victim. The victim picked up the phone to cancel the order, but the defendant grabbed the phone and cursed her again. She slapped him and told him not to speak to her in that manner. The defendant again began to yell but soon left the premises. The victim took the baby upstairs to bed with her. An hour later the defendant returned and berated her, grabbed the baby and took him to his crib, which was located in the girls' bedroom. There was conflicting evidence as to whether the defendant threw the baby into his crib. Believing that the baby was in danger, the victim tried to intercede but the defendant pushed her onto the floor. When she attempted to call the police from a downstairs phone, he grabbed her and dragged her back upstairs. Once in the master bedroom, he threw her about, held her up by her hair, pushed her onto the bed and threatened to kill her.

Subsequently, the defendant went to the girls' room and woke them up, asking who their mother had been seeing. The older daughter replied that her mother had spoken to the school counselor, referring to the school social worker. The defendant, still angry, returned to the master bedroom and pulled the victim onto the bed. She submitted to his sexual advances and had intercourse with him to avoid any further conflict and to avoid disturbing the children further. The following day she filed a complaint with Officer Patrick Buden of the Plainville police department.

The defendant was arrested on October 12, 1990. He was charged with eight counts and acquitted of four.[2] This appeal ensued.

[2] The defendant was acquitted of committing sexual assault in a spousal or cohabiting relationship, General Statutes § 53a-70b, risk of injury to a child,

## I

The defendant claims that the state's evidence was insufficient to sustain his convictions. We do not reach the merits of this claim because the defendant failed to preserve it.

The trial court denied the defendant's motion for judgment of acquittal made at the completion of the state's case. Practice Book § 864. The defendant presented a defense but failed to move for a judgment of acquittal a second time.[3] "Under the existing rules, when a defendant elects to put on evidence after a denial of his motion for judgment of acquittal at the end of the state's evidence, he is deemed to have waived his right to appellate review as to the sufficiency of the evidence at the completion of the state's case. *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992); *State* v. *Kari,* 26 Conn. App. 286, 291, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992)." *State* v. *Wolff,* 29 Conn. App. 524, 527, 616 A.2d 1143 (1992). This rule is still accepted by Connecticut courts despite the criticism leveled at it. See *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986); *State* v. *Lizzi* 199 Conn. 462, 464–65, 508 A.2d 16 (1986); *State* v. *Rutan,* 194 Conn. 438, 444, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 352, 481 A.2d 48 (1984); *State* v. *Wolff,* supra, 527–28 n.5; *State* v. *Booker,* supra. Furthermore, the defendant has not asked that this claim be reviewed under *State* v. *Evans,*

General Statutes § 53-21, reckless endangerment in the second degree, General Statutes § 53a-64, and assault in the third degree, General Statutes § 53a-61. All of these charges related to the October 3, 1990 incident.

[3] A motion for judgment of acquittal may properly be made at the close of the state's case; Practice Book §§ 883, 884; at the completion of all of the evidence; Practice Book §§ 883, 885; and following a guilty verdict. Practice Book § 899.

165 Conn. 61, 69–71, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1990). Therefore, we will not address the defendant's insufficiency argument because the motion was not renewed and as such the claim was not preserved.

## II

The defendant next claims that General Statutes § 53a-70b is unconstitutional because it is vague as applied to the facts of this case. The defendant maintains that the statute's definition of "use of force" would permit a conviction solely because the defendant's physical strength was superior to that of the victim.[4] Before addressing the merits of this claim, we must first consider the threshold question of reviewability.

The state maintains that the defendant's claim is not reviewable because it was not distinctly raised at trial and because the defendant has not requested that we review it under *Evans* and *Golding.* Notwithstanding this procedural default, our courts have considered whether to review unpreserved claims of unconstitutional vagueness utilizing the criteria set forth in *Evans* and *Golding. State* v. *Jones,* 215 Conn. 173, 179, 575 A.2d 216 (1990); *State* v. *Jones,* 29 Conn. App. 683, 686, 617 A.2d 918 (1992).

"*State* v. *Golding,* supra, establishes that a defendant cannot prevail on an unpreserved constitutional claim unless all four conditions are met, any one of which may be considered first. *State* v. *Shaw,* 24 Conn.

---

[4] General Statutes § 53a-70b (b) provides: "No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury."

General Statutes § 53a-70b (a) (2) provides: " 'Use of force' means: (A) Use of dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim."

App. 493, 497, 589 A.2d 880 (1991). Under the third *Golding* condition, the defendant can prevail only if the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding,* supra, 240." *State* v. *Mezrioui,* 26 Conn. App. 395, 400–401, 602 A.2d 29 (1992).[5]

A claim of unconstitutional vagueness normally "implicates the fundamental due process right to fair warning and the record is adequate to facilitate review." *State* v. *Schriver,* 207 Conn. 456, 459, 542 A.2d 686 (1988). "The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. *Smith* v. *Goguen,* 415 U.S. 566, 572–73, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); *Mitchell* v. *King,* 169 Conn. 140, 142–43, 363 A.2d 68 (1975)." *State* v. *Schriver,* supra, 459–60. "In order to surmount a vagueness challenge, 'a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited.' *McKinney* v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979). The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 840 (1948)." *State* v. *Schriver,* supra, 460.

---

[5] The four conditions that must exist before a defendant may prevail on an unpreserved claim of constitutional error are as follows: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1990). The absence of any one of these conditions will cause the defendant's claim to fail. Id.

"As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes on fundamental constitutional guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of complex legislation." (Citations omitted.) *State* v. *Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980).

The defendant maintains that because no credible evidence was offered showing that violence was involved in either altercation between the defendant and the victim, the defendant was convicted solely because of his physical strength. Thus, according to the defendant, because the "superior physical strength" definition of "use of force" is vague as applied to the facts of this case, his constitutional rights have been infringed. This claim does not clearly implicate the defendant's constitutional rights because it is predicated on the credibility of the evidence before the jury.

"[I]t is within the province of the jury to determine credibility and assess weight to be given the evidence submitted. *State* v. *Reyes,* 19 Conn. App. 179, 191, 562 A.2d 27 (1989). [W]hen the conclusion is one that is dependent on the resolution of conflicting testimony, it should ordinarily be left to the jury for its judgment. *State* v. *Torello,* 100 Conn. 637, 647–48, 124 A. 375 (1924). *State* v. *Bewry,* 26 Conn. App. 242, 246, 600 A.2d 787 (1991), cert. denied, 221 Conn. 911, 602 A.2d 11 (1992). The evaluation of testimony is the sole province of the trier of fact. *State* v. *Johnson,* 26 Conn. App. 553, 557, 603 A.2d 406 (1992)." (Internal quotation marks omitted.) *State* v. *Lago,* 28 Conn. App. 9, 31, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992).

The defendant was charged under § 53a-70b (b) in that he compelled the victim to engage in intercourse "by the use of force . . . ." The jury was instructed that "use of force" may be defined as "use of actual physical force or violence or superior physical strength against the victim." General Statutes § 53a-70b (a) (2) (B). As in *State* v. *Jones,* supra, the defendant was charged by a short form information and did not request a bill of particulars or a statement of essential facts. "The burden rests on the defendant to request a bill of particulars and a statement of essential facts. *State* v. *Vincent,* 194 Conn. 198, 205, 479 A.2d 237 (1984); *State* v. *Osman,* 21 Conn. App. 299, 310, 573 A.2d 743 (1990), rev'd on other grounds, 218 Conn. 432, 589 A.2d 1227 (1991); see also Practice Book §§ 625 and 831." *State* v. *Jones,* supra, 689. There was evidence relating to the conviction under § 53a-70b before the jury that the defendant pinned the victim to the floor, ripped off her clothes, threatened her, and hit her. Furthermore, the jury's return of a general verdict of guilty prevents us from knowing on which of the definitions of "use of force" the jury based its finding of guilty. See *State* v. *Toth,* 29 Conn. App. 843, 863, A.2d (1992), cert. denied, 225 Conn. 908, 621 A.2d 291 (1993). Thus, we do not know whether the jury found the defendant guilty specifically on the "superior physical force" definition of use of force because the jury was instructed on all three definitions of "use of force." Because it is not clear from the jury's verdict on which definition of use of force, General Statutes § 53a-70b (a) (2) (B), the jury based the defendant's conviction, he has not satisfied his burden of showing a clear constitutional violation under *Golding.*

### III

The defendant next claims that the prosecutor's argument to the jury constituted misconduct and deprived him of his right to a fair trial. Specifically, the defend-

ant claims that the prosecutor misstated the testimony given by the older daughter regarding her observations on the night of September 21, and improperly explained the testimony given by the victim relating to the injuries her husband inflicted on her. We agree with the state's position that the defendant's claim is not reviewable because it has not been preserved for appellate review. The defendant "took none of the appropriate measures to alert the trial court to a potential problem . . . ." *State* v. *Williams,* 204 Conn. 523, 535, 529 A.2d 653 (1987). The defendant did not object to the remarks he now claims prejudiced him, nor did he move for a mistrial on the basis of the prosecutor's statement.

The defendant argues that this claim is reviewable under the "exceptional circumstances" doctrine of *State* v. *Evans,* supra. We disagree because in this case, in contrast to the cases the defendant relies on, the record does not demonstrate "a pattern of repeated, strident and serious misconduct." *State* v. *Rodgers,* 207 Conn. 646, 653, 542 A.2d 1136 (1988). "In the cases in which we have denied *Evans* review, the claimed misconduct consisted of isolated and brief episodes, and did not reveal a pattern of conduct repeated throughout the trial. Moreover, the misconduct was not blatantly egregious. *State* v. *Williams,* supra, 537 . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodgers,* supra, 653–54; *State* v. *O'Brien,* 29 Conn. App. 724, 727–28, 618 A.2d 50 (1992), cert. denied, 225 Conn. 902, 621 A.2d 285 (1993). This claim relates only to two isolated portions of the state's closing argument.

The defendant argues that the following comments were egregious in that they suggested that the older daughter testified that she saw the defendant rape her mother when, in fact, she did not actually testify that she had seen the defendant rape her mother. The state's attorney stated, with reference to the September 21

altercation, that the victim "testified that they had an argument and he left and that he came back, told her he was horny, and at that point grabbed her about the front of her shirt sending the buttons flying, exposing her bra then ripping her bra and a few seconds later made some comments to her. 'You are not going to get away with them.' She then testified he threw her to the floor in the living room and ripped the bra. She indicated that it hurt. He pinned her to the floor and managed to get her pants off. She made a statement, 'You are not going to do this to me. You'll have to break my legs.' His response was, 'Which one do you want me to break first?' She indicated he eventually got her pants down and forced her to have sexual intercourse and that after that, he indicated it was fun. She said she screamed and cried throughout that incident. But you know what? There was someone who saw this happen. There was someone who was sitting on the stairs that night who saw what happened and you saw her testify, and that upset her. It upset her so much that the very next school day, a Monday, she started telling people about it. And her recollection . . . was that she saw the defendant on top of her mother. The mother was screaming and trying to get him off. . . . What he doesn't know is there was someone watching what happened and that was [the older daughter]. Do you think she made that all up? Is she such a good actress that she would make that up?"

The defendant also argues that the state's attorney misled the jury when he tried to explain why other witnesses did not remember seeing bruises that the victim testified she sustained from her husband's actions. The state's attorney stated that the defendant's counsel "argued that well, while Officer Buden didn't see any bruises on October 4th. Well, most of the testimony, if you recall, with respect to bruises concerned the September 21st incident, not the October 4th inci-

dent. It's her bosses that said when she came back to work in late September, that's when they saw the bruises. Well, by October 24th, those bruises would have been gone. They would have been three weeks old or two weeks old. And [the victim] testified that on October 4th, she was sore, but he didn't strike her. She probably wouldn't have any bruises.''

Even if we were to find these two segments of the closing argument misleading, they did not rise to the level of misconduct that constitutes a denial of the right to a fair trial. *State* v. *Rodgers,* supra. Therefore, we conclude that the remarks of the prosecutor do not constitute the ''exceptional circumstance'' necessary for us to entertain this unpreserved claim. Id.; *State* v. *Golding,* supra; 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 12.

## IV

The defendant next claims that he was denied the effective assistance of counsel at trial. Our Supreme Court has emphasized in other cases that a claim of ineffective assistance of counsel is more properly pursued on a petition for a new trial or on a petition for a writ of habeas corpus rather than on direct appeal. *State* v. *Walker,* 215 Conn. 1, 9, 574 A.2d 188 (1990); *State* v. *Leecan,* 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Accordingly, we will not review this claim.

## V

The defendant also challenges the trial court's decision to allow into evidence expert testimony relating to the general characteristics of a person suffering from battered women's syndrome. Specifically, the defendant argues that the prejudicial effect of this testimony outweighed its probative value.[6]

---

[6] The defendant does not question the expertise of these witnesses to testify. See *Knock* v. *Knock,* 224 Conn. 776, 783, 621 A.2d 267 (1993).

The state argues that we should not entertain this claim because it was not preserved in the trial court. "We are not bound to consider claims that are not distinctly raised at trial. Practice Book § 4185. Review of evidentiary rulings is limited to the specific legal ground raised on the objection." *State* v. *Anderson,* 28 Conn. App. 833, 844, 614 A.2d 438, cert. denied, 224 Conn. 908, 615 A.2d 1048 (1992); see also Practice Book § 288. At trial, the state offered the testimony of a psychiatric social worker and an outreach advocate to testify to the general characteristics of a battered woman.[7] The testimony was offered to explain why the victim did not immediately report the sexual assault of September 21, to the police.[8] The defendant objected to this testimony during an offer of proof relating to the psychiatric social worker's testimony on the ground that the evidence was overly prejudicial because its introduction would lead the jury to believe that the victim was a battered woman.[9] The trial court overruled this objection. Exceptions were taken on this ground during the testimony of each of the expert witnesses. Thus, the claim that the testimony's probative value is outweighed by its prejudicial effect has been properly preserved.

---

[7] Each also testified that the victim said she had been sexually assaulted by her husband. This testimony was admitted under the constancy of accusation exception to the hearsay rule and has not been challenged by the defendant.

[8] Both witnesses also testified as to the victim's behavior at the time that each spoke to her about the sexual assault.

[9] Counsel for the defendant objected as follows: "[T]he probative value of anything that [the psychiatric social worker] could offer in this particular case would be highly prejudicial to the defendant. I think the whole atmosphere created by his testimony and his using the words of a battered individual is going to create a very prejudicial position in the minds of the jury. . . . I don't feel that the jury would be in the position to really appreciate [the testimony], and I think they are going to make certain assumptions that are going to be highly prejudicial to this defendant, and I would object to his testifying on this subject."

The defendant argues that the introduction of the testimony concerning battered women's syndrome led the jury to conclude the victim was battered. The defendant contends that because there was no evidence before the jury that the victim was a battered woman, this testimony greatly prejudiced the defendant and that its probative value was minimal.

Before the experts' testimony was admitted, counsel for the defendant attempted to impeach the credibility of the victim on cross-examination by questioning her about her failure to notify the police immediately of her husband's actions. The testimony of both witnesses was limited to the characteristics of a woman suffering from this syndrome and neither expert was permitted to proffer their opinions as to whether the victim actually suffered from the syndrome or as to whether it was surprising that the victim did not immediately contact the authorities. The outreach advocate testified that women suffering from that syndrome often do not report their abusers to the police.[10] Engelhardt testified that a woman suffering from the syndrome is unlikely to leave her abuser because she is often emotionally and financially dependent on him.[11]

---

[10] The outreach advocate testified: "A woman suffering from battered women's syndrome has a very difficult time in decision-making, especially around the decision whether or not to leave. She's very confused, and torn between wanting things to work out, to get better, believing what she's being told by her partner, and her constant fear for her safety and that of her children. . . . Because of those things that I was just describing, it makes it very difficult for a woman in that position to call the police knowing that also if she's had any experience in the past or any knowledge of it, that probably her partner will be released in a few hours time. That the fact that when a woman attempts to leave is the most dangerous time for her and the children."

[11] Engelhardt testified to the following: "A woman who is described as suffering from battered women's syndrome would be feeling trapped in a relationship with a spouse or significant other in her relationship [with a person] who is physically or sexually abusive to her. In spite of that abuse, the woman would feel emotionally dependent on that person, financially dependent on that person, and for those reasons, would not move towards getting out of the relationship in spite of the fact that she was being abused."

The trial court found that the testimony was probative with regard to the credibility of the victim's testimony.[12] In weighing the probative value of evidence against its prejudicial effect, the trial court enjoys broad discretion. *State* v. *Ouellette,* 190 Conn. 84, 94, 459 A.2d 1005 (1983). A trial court also enjoys broad discretion in ruling on the admissibility of the opinions of expert witnesses. *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986); *State* v. *Christiano,* 29 Conn. App. 642, 649, 617 A.2d 470, cert. granted, 225 Conn. 906, 621 A.2d 288 (1992). " 'On appeal, we are limited in our review to a determination of whether, under the circumstances of the case, in exercising its broad discre-

---

[12] The trial court explained: "In this particular case, I find that there is probative value because as this case has been tried, counsel for both sides have permitted, I think, to a great degree, the issue of whether there is a battering relationship here to enter into the case. It has been contested by the defense largely that there was such a relationship. It has been contested at every turn through the children and through the complainant herself. The state has been allowed to introduce testimony about prior incidents including the Easter incident and other incidents in which there are claims that there were battering, there was a pattern of battering that had gone on for some time, a pattern which had been made through cross-examination that the failure to report early and often raises serious doubt as to the integrity of the witness and as to the truth of her allegations. These are matters that I think have been fairly brought forward by the defense not inappropriately, but they've set this case in a context and in that context I think the truthfulness of the witness as to her claim why she didn't come forward in the report is put in question. I think there is enough testimony on the record, suffice it to say, then, with respect to battering over a period of time with respect to an adverse, hostile, physical relationship between Mr. Battista and the complainant and enough of a claim raised with respect to a failure to report in a timely fashion both the Easter incident to follow up on that and these later two incidents to permit in generic testimony as to the manner in which the battered women's syndrome operates on the psyche of a person who is actually victimized by it. What the witness will not be allowed to testify to is his conclusion that she was a battered woman. He will not be able to testify as to his conclusion that she was suffering from the battered women's syndrome, not to be able to testify that he would not be surprised if the reasons she didn't report this was because she was a battered woman." The court concluded that the testimony of the witness would be limited in this manner to avoid invading the province of the jury.

tion, the trial court could legally act as it did, and not whether we, under the same circumstances, would make the same ruling.' *State* v. *Aspinall,* 6 Conn. App. 546, 554, 506 A.2d 1063 (1986)." *State* v. *Millstein,* 8 Conn. App. 581, 594, 513 A.2d 1253, cert. denied, 201 Conn. 814, 518 A.2d 72 (1986). We find that the trial court properly admitted the testimony on battered women's syndrome for rehabilitative purposes.

Expert testimony is admissible if "(1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. [*State* v. *Kemp,* supra]; see also *State* v. *Spigarolo,* 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); *State* v. *Watson,* 26 Conn. App. 151, 153, 599 A.2d 385 (1991), cert. denied, 221 Conn. 907, 600 A.2d 1362 (1992)." (Internal quotation marks omitted.) *State* v. *Christiano,* supra, 649–50. The defendant's claim is related to the third criterion, which addresses the relevance of the testimony.

"[E]vidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Millstein,* supra, 596. "[T]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and in assessing the probative value of the direct testimony." (Internal quotation marks omitted.) *State* v. *Hernandez,* 224 Conn. 196, 207, 618 A.2d 494 (1992). The victim's failure to report the September 21, 1990 incident in a timely manner was repeatedly pressed by the defense and the victim herself was questioned on this by the defense on cross-examination. To repudiate the

defense's suggestions that the victim was not credible because she did not immediately contact the police, the prosecution offered the description of battered women's syndrome to explain the victim's actions.

Contrary to the defendant's assertions, the state had presented evidence of an abusive relationship warranting the testimony on battered women's syndrome. The relationship of the victim and the defendant was stormy, the defendant having thrown the victim out of the house on five occasions in 1990. There was testimony that the defendant verbally abused the victim, placed her neck in a choke hold, ordered her out of the house, threatened her, held her down, threw her about the house, and sexually assaulted her. We have previously found that rehabilitative evidence used to explain the victim's delay in disclosing abuse provides "the jurors with a relevant insight into the victim's behavior that they might not otherwise bring to its evaluation of the victim's credibility." *State* v. *Christiano*, supra, 654; see *State* v. *Spigarolo*, supra, 380 ("where defense counsel has sought to impeach the credibility of a complaining minor witness in a sexual abuse case, based on inconsistency, incompleteness or recantation of the victim's disclosures pertaining to the alleged incidents, the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents"). Thus, the trial court did not abuse its discretion in determining that the evidence is relevant to the issue of credibility.

Furthermore, we find that trial court also properly concluded that the prejudicial effect of the testimony did not outweigh its probative value, especially given the trial court's limiting instruction.[13] See *State* v.

[13] The trial court instructed the jury as follows: "Finally, a third type of evidence which was introduced solely on the question of credibility was evidence concerning the battered women's syndrome. You recall there were

*Ouellette,* supra, 94–97. "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982). "There are situations where the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes

---

two witnesses who described in general terms the operation of the battered women's syndrome. This testimony that was offered by the witnesses was limited to that description. These individuals offered no opinion in this court and are not to be understood by you as having offered any opinion as to whether, in fact, [the victim] was suffering from the battered women's syndrome at any time relevant to this case. Why was that testimony introduced? In the testimony, as I recall it—and again it's your recollection that controls in this matter entirely—a description of this syndrome was that if an individual is in a marital relationship or a relationship with a significant other and is suffering abuse on a prolonged basis in a relationship, and dependent personally, emotionally upon the individual who is her abuser, that if in fact she is in that relationship, she may, as a person who suffers from the syndrome frequently does, not disclose to authorities in a timely fashion that she has been abused for fear of terminating the relationship. Now, again, this was offered, this description of the operation of the battered women's syndrome in general terms, was offered for the following purposes: (1) so that you might, if you choose to accept it as true that there is such a syndrome and it has these effects upon people; (2) so that you might apply it to this case if you find that the facts, or the facts put forward, show, in fact, that [the victim] was a person in such a dependent relationship suffering from such prolonged abuse and therefore, in fact, acting consistently with the battered women's syndrome. If you find she did not, she did not timely report acts of abuse perpetrated against her, that, however, is the only purpose for which the evidence was introduced and it's entirely up to you whether to accept the testimony of the witnesses, whether to find that [the victim] might have been a person suffering from that syndrome and whether to find whether or not if she was indeed suffering from it, if in any way it caused her not to report these incidents in a timely fashion. If you find that she was, you may use that inference only for the purpose of showing that she's not less credible for failing to come forward and make her report in a timely fashion. The judgment is entirely yours."

Although the defendant objected following the charge, this charge has not been challenged on appeal. The objection was directed more toward the introduction of the evidence and no suggestion for a curative charge was put forward.

may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." Id., 702–703. It is also important that the defense, on cross-examination of the victim, sought to impeach her credibility by questioning her as to her delay in accusing the defendant. The experts' testimony was offered for the rehabilitative purpose of explaining the victim's failure to report the assault. The court's instructions on credibility made it very clear that the jury should utilize the expert testimony solely for purposes of considering the credibility of the victim.

Even if the evidence were not admissible, its admission was harmless because the limiting instruction vitiated any potential prejudice on the limited purpose of the evidence of the expert's testimony concerning battered woman's syndrome. The defendant does not claim now, nor did he at trial, that the trial court's decision to admit the testimony concerning battered women's syndrome violated his constitutional rights. The defendant, therefore, bears the burden of proving harmfulness by showing that it is more probable than not that the decision of the trial court affected the result of the trial. *State* v. *Payne,* 219 Conn. 93, 102, 591 A.2d 1246 (1991). This burden has not been satisfied.

## VI

The defendant's final claim relates to the admissibility of the testimony of the victim's father. He testified about an incident that occurred after he brought the victim and the children back to the Battistas' condominium in August, 1990. The defendant was extremely hostile to them upon their arrival, and, after mistreat-

ing them, ordered the victim to leave. The victim and the children remained in the condominium with the defendant nevertheless.

The defendant's argument that this evidence impermissibly tried the defendant on his character was not properly preserved in the trial court. Practice Book § 288; *State* v. *Anderson,* supra. The defendant's argument that the testimony was irrelevant and prejudicial because it dealt with the prior bad act of the defendant, is properly before us, however.

"[W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling." (Citation omitted.) *State* v. *Mooney,* 218 Conn. 85, 131, 588 A.2d 145, cert. denied,    U.S.   , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). We find no such abuse of discretion or injustice in this case. The trial court found this testimony to be more probative than prejudicial because it tended to show that the victim was unwilling to leave an abusive relationship. It was relevant to the rehabilitative testimony concerning battered women's syndrome. Even if we assume that this ruling was erroneous, the trial court's decision was harmless because testimony about this incident had been admitted without objection. See *State* v. *Payne,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.