STATE OF CONNECTICUT *v.* ROBERT EARL ARTIS
(12138)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued December 11, 1985—decision released February 11, 1986

*Timothy H. Everett,* with whom, on the brief, was *Timothy Pothin,* certified legal intern, for the appellant (defendant).

*Edmund C. Tiryakian,* special deputy assistant state's attorney, with whom were *Julia D. Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a substitute information with sexual assault in the first degree in violation of General Statutes (Rev. to 1979) § 53a-70 (a)[1] and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[2] After a trial, a jury found him guilty as charged and he was sentenced to an effective term of imprisonment of not less than seven nor more than fourteen years. The defendant has appealed claiming that there was insufficient evidence for the jury to have found him guilty of sexual assault in the first degree and, therefore, that the trial court erred in denying his motion for acquittal. The sole issue on appeal is whether the state presented sufficient evidence of penetration for the jury to find that element of the crime proved beyond a reasonable doubt.

A recital of some of the relevant facts which the jury might reasonably have found is necessary for consideration of the defendant's claim. On the evening of October 23, 1980, while waiting for a bus at the corner of Grand Avenue and Shelter Street in New Haven, the victim was offered a ride by Willie Barrett[3] and the defendant, Robert Earl Artis, both of whom she had known for a number of years. Instead of driving her to her destination, the two took her to a dirt road in

[1] "[General Statutes (Rev. to 1979)] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury."

[3] Barrett was independently tried and convicted. His conviction was reversed by this court in State v. Barrett, 197 Conn. 50, 495 A.2d 1044 (1985), for reasons unrelated to this appeal.

a remote area of Wallingford. Once there, both the defendant and Barrett climbed into the back seat of Barrett's car where the victim was seated. The victim was then punched and threatened with a sharp instrument and despite her struggles her jeans and underpants were removed. The victim testified that at that point her legs were "tight together, straight, facing the front ways," but that Barrett was holding her around the waist and the defendant was "[t]rying to open—pull my legs apart." They eventually succeeded in opening her legs. Then, she said, "Robert had sex with me" and "Robert did it." In response to the state's attorney's question, "When you say he 'did it' did he have sexual intercourse with you?" The victim answered, "Yes." She also answered "yes" to the state's attorney's question, "At some point Robert finished having sex with you, is that correct?" Barrett then had sexual intercourse with the victim.

The victim was then released from the car without jeans or underpants in order to relieve herself. She made an unsuccessful attempt to obtain aid or escape but returned to the car when the pair threatened to leave her. She thought then that her ordeal was over. The defendant, however, drove the car a short distance to a circular area, stopped and again got into the back seat with Barrett and the victim. The victim "started tussling with them again" but Barrett had sexual relations with her. The state's attorney asked, "And then, when he was through, what happened?" The victim answered "Robert." The state's attorney asked, "Robert, what?" The victim replied, "He had sex with me." The state's attorney then asked, "And he got into the back seat and had regular sexual intecourse with you?" The victim answered, "Yes." The defendant then got behind the wheel and started to drive, and Barrett got "on top" of her and had "sex" with her again.

Eventually the victim was driven to her home in New Haven. Upon leaving Barrett's car, she ran toward her house screaming for her brother. She encountered her brother's girlfriend and told her she had "just got raped" by Barrett and the defendant. Shortly thereafter she told a female New Haven police officer that she "had got raped." She also testified that she told a physician at Yale-New Haven Hospital that she "had got raped." On cross-examination, in response to a question by defense counsel asking her if she recalled how many times she was "sexually assaulted" by the defendant, the victim answered "twice."

Richard Holden, a physician who examined the victim at Yale-New Haven Hospital in the early morning hours of October 24, testified that he observed bruising of the victim's face and wrist but that he did not observe any injury to the vagina or pelvic region. He also testified that swabs he took did not reveal the presence of sperm, but that that was "not unusual." Abraham Stolman, a toxicologist, testified that an examination revealed seminal stains on the defendant's underpants and on the victim's underpants.

The defendant claims that because the victim neither used the word "penetration" in her testimony nor testified explicitly that she had been penetrated when the defendant engaged in sexual intercourse with her, the state failed to produce sufficient evidence to prove his guilt. He argues that there must be some direct evidence or testimony that there was penetration before a jury can determine beyond a reasonable doubt that vaginal sexual intercourse has occurred. We disagree.

"The state must prove every essential element of the crime beyond a reasonable doubt and, while the jury may draw reasonable and logical inferences, it may not resort to speculation." *State* v. *Green,* 194 Conn. 258, 274, 480 A.2d 526 (1984). However, evidence, whether

direct or circumstantial, which convinces a jury beyond a reasonable doubt is all that is required to sustain a conviction; *State* v. *Dubina,* 164 Conn. 95, 98, 318 A.2d 95 (1972); and "evidence . . . must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). " 'When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' " *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979), quoting *State* v. *Jackson,* supra.

There is no doubt that penetration is an element of the crime of sexual assault in the first degree when the state alleges that vaginal sexual intercourse was accomplished by force. *State* v. *Kish,* 186 Conn. 757, 763, 765, 443 A.2d 1274 (1982); see General Statutes § 53a-65 (2). The state was therefore required to prove penetration beyond a reasonable doubt. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

Whether there was actual penetration was a question of fact for the jury. *Beckley* v. *State,* 353 So. 2d 542, 544 (Ala. Crim. App. 1977). Proof of penetration need not take any particular form and may be proved by circumstantial evidence. *Swint* v. *State,* 455 So. 2d 285, 287 (Ala. Crim. App. 1984); *Beckley* v. *State,* supra; *State* v. *Golden,* 430 A.2d 433, 436 (R.I. 1981). "When one of understanding testifies to a completed act of sexual intercourse, it has been held to be sufficient proof of penetration." *State* v. *Golden,* supra. "The prosecutrix's testimony here that the defendant had 'sex' and 'intercourse' with her likewise was sufficient to support a finding by the jury that there was penetra-

tion." *State* v. *Ashford,* 301 N.C. 512, 514, 272 S.E.2d 126 (1980); see also *People* v. *Van Allen,* 275 App. Div. 181, 188, 89 N.Y.S.2d 594 (1949).

We need not assume that the jury was either so naive or so jaded by tales of sexual deviation that if it believed the victim's testimony, particularly her affirmation that the defendant had "regular sexual intercourse" with her, it could not reasonably have concluded that penetration occurred. The evidence was sufficient for the jury to find the defendant guilty as charged.

There is no error.

In this opinion PETERS, C. J., SHEA and DANNEHY, Js., concurred.

ARTHUR H. HEALEY, J., concurring. I write separately to underscore what I deem to be a possible yet unintended interpretation of the majority opinion: that a jury, consistent with its sworn duty to convict only upon proof beyond a reasonable doubt, may be considered either naive or jaded for not convicting where somewhat generic terms are all the evidence there is to prove an essential element of sexual assault in the first degree. While I concur in the result, I, nevertheless, make the following observations.

The conduct of this defendant was abhorrent, detestable and repulsive; but this in no fashion lessened the state's burden of proof. I do not maintain that the victim of such a crime must be required to go into sordid detail in order for the state to establish that penetration actually occurred during the course of the assault. It is my view that although consent to the act was the main issue in this case, it nevertheless does not detract from the state's obligation to prove *all* the elements of sexual assault in the first degree with greater clarity than was done here, especially insofar as the element of penetration is concerned. I do subscribe to the

view that " '[j]urors are not "expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted.)' " *State* v. *Scielzo,* 190 Conn. 191, 198 n.11, 460 A.2d 951 (1983), quoting *Frankovitch* v. *Burton,* 185 Conn. 14, 22, 440 A.2d 254 (1981). Moreover, there is nothing to indicate that the jury in this case acted other than honorably and faithfully in their duty.

Courts have frequently approved Sir Matthew Hale's statements with respect to the crime of rape that "it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent . . . . " 1 Hale, Pleas of the Crown (1778) p. 634; see, e.g., *People* v. *Asavis,* 22 Cal. App. 2d 492, 497, 71 P.2d 306 (1937); *State* v. *Madrid,* 74 Idaho 200, 206, 259 P.2d 1044 (1953); *Carr* v. *State,* 208 So. 2d 886, 889 (Miss. 1968); 75 C.J.S., Rape § 66. "Reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases. [*People* v. *Kazmierczyk,* 357 Ill. 592, 192 N.E. 657 (1934)]." *People* v. *Qualls,* 21 Ill. 2d 252, 257, 171 N.E.2d 612 (1961).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983). It cannot be seriously argued that one need be considered sybaritic in requiring the state to adduce somewhat more explicit evidence than we see in the evidence of penetration in this case. This could be done without being offensive to delicacy while at the same time enhancing a just result. The evidence of that ele-

ment here, together with the majority's view that an acquittal in this case might create the perception that the trier of fact was either naive or jaded, impels this due process observation: "[T]he requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and greatest self-sacrifice could carry it on without danger of injustice. Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749 (1927); *Estes* v. *Texas,* 381 U.S. 532, 543, 85 S. Ct. 1628, 14 L. Ed. 2d 543, reh. denied, 382 U.S. 875, 86 S. Ct. 18, 15 L. Ed. 2d 118 (1965).

I, therefore, concur in the result.