# STATE OF CONNECTICUT *v.* EDWIN M.[1]
## (AC 30481)

Harper, Robinson and Schaller, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued September 7—officially released November 2, 2010

*Arnold V. Amore*, special public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John J. Davenport*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Edwin M., appeals from the trial court's judgment of conviction, following a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the trial court improperly permitted

a state's witness to testify as an expert, (2) the trial court improperly permitted expert testimony on an ultimate issue of fact and (3) the evidence adduced at trial was insufficient to support his conviction of two counts of sexual assault in the first degree and one count of attempt to commit sexual assault in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. K and D are the parents of two minor children, one of whom is the victim, A. Prior to May, 2006, K watched the children during the day before going to work in the evening, and D watched the children in the evening after working in the morning. This working arrangement ensured that at least one parent was available to watch the children throughout the day. In May, 2006, however, K's work schedule changed and her job required her to work the day shift three days each week. As a result, K arranged for H, the couple's niece, to watch the two children on the days K had to work a day shift. The arrangement provided that K would bring the children to H's house in the mornings on days when she worked a day shift, and D would pick them up later in the afternoon.

On the morning of May 17, 2006, when the victim was seventeen months old, K dressed the children and changed the victim's diaper. In doing so, K did not notice any bruising or marks on the victim's body, aside from two small bite marks, one on her back and one on her right arm, that had been inflicted by the couple's other child. Later that morning, some time after 7 a.m., K brought the two children to H's house and then went to work.

At around 10 or 10:30 a.m., H laid the victim down for a nap on the bed in her bedroom. When H brought the victim into the bedroom, the defendant, who was H's boyfriend at the time, was lying on the bed watching

television. The defendant also was the only male present at the house. He remained in the bedroom with the victim, either sleeping or watching television, until approximately 3:30 or 4 p.m.

Throughout the day, H returned to the bedroom periodically to check on the victim and to change her diaper and clothing. During this time, H did not notice any marks or bruises on the victim's face[2] or any other area of her body. At approximately 2:20 p.m., however, the defendant told H to stay out of the bedroom. Sometime thereafter, H heard the victim crying but did not enter the bedroom or check on the victim again until D arrived at the house.

D arrived to pick up his children around 3:30 or 4 p.m. and noticed that the victim had suffered multiple injuries, including a swollen lip, blood in her mouth, a bruised eye, red ears and a rash on her feet.[3] When H was unable to explain how the injuries had been sustained, D took the victim to St. Mary's Hospital in Waterbury, where the victim was admitted as a patient.

At approximately 6:30 p.m., Francis Brevetti, an officer with the Waterbury police department, was dispatched to St. Mary's Hospital in response to a call from Pamela Love, a physician in the pediatric unit of the emergency department, regarding a complaint alleging assault to a child. After arriving at the hospital, Brevetti investigated the complaint and subsequently notified the detective bureau at the Waterbury police department of the incident. Gary Agnon, a sergeant, along with a detective, responded to Brevetti's call.

[2] Although the record reveals that the victim, on the morning of May 17, 2006, may have sustained an injury to her face as a result of a dog bite, witness testimony indicates that this injury was trivial.

[3] Although D did not see the victim on the morning of May 17, 2006, he had seen her on the evening of May 16, 2006. D testified that the injuries he observed on May 17, 2006, were not present on the victim the previous evening.

After speaking with hospital personnel, Brevetti, and D, Agnon and the detective proceeded to H's house. Upon learning that the police were at the house to investigate the injuries to the victim, the defendant instructed H to lie to the police and say that he was not in the house. Although H complied, the police discovered the defendant in the bedroom when they conducted a consensual search of the house. The police then asked the defendant and H to accompany them to the police station for questioning. Before going to the police station, the defendant told H not to reveal his real name and to tell the police that he had arrived at the house twenty minutes after the victim had left.

At the police station, the defendant initially provided the police with a false name but later admitted that he had lied when Agnon informed him that the information that he had provided was not consistent with a computer check. Afterward, during questioning, the defendant again lied to the police, stating that he had not had any contact with the victim and had arrived at the house twenty minutes after the victim had left. Again, the defendant admitted that he lied when Agnon informed him that H had provided the police with other information. He thereafter admitted that he had arrived at the house at about 3 or 4 a.m., had been at the house all day and had been in the bedroom with the victim for several hours.

On May 18, 2006, three medical professionals examined the injuries sustained by the victim. These examinations revealed that the victim had suffered a multitude of injuries to the entirety of her body and that the severity of these injuries was typically not seen in children of the victim's age. In her mouth, she had a torn frenum[4] and two well-defined, oval abrasions on

---

[4] The frenum is the small strip of tissue that connects the tongue to the floor of the mouth.

her soft palate, injuries consistent with a large blunt-ended object being forcefully pushed into her mouth. On her face and ears, the victim had an abrasion and multiple bruises consistent with forceful trauma, such as a blow to her head or someone pulling on her ears. The victim's ankles and feet had bruising that was consistent with forceful holding beyond that necessary to change a diaper. In her genital and rectal area, the victim had generalized bruising, indicative of forceful compression that is usually inflicted by repetitive trauma, and an anal tear. The victim also had vaginal, labial and hymeneal bruising that was consistent with direct forceful injury.

On May 18, 2006, the police executed a search warrant at H's house and seized several items of clothing, including the victim's shorts, the defendant's shirt and boxer shorts, and several washcloths. Subsequent testing of these items revealed the presence of human blood and saliva on the victim's shorts, the defendant's shirt and three of the washcloths. Thereafter, DNA testing revealed that the victim and the defendant were both contributors to DNA found on the victim's shorts and that the defendant was a contributor to the DNA found on his shirt but that the victim could not be ruled out as a contributor.

The defendant was arrested on May 22, 2006. On June 4, 2008, the state filed a second substitute information, charging the defendant with two counts of sexual assault in the first degree in violation of § 53a-70 (a) (2), one count of attempt to commit sexual assault in the first degree in violation of §§ 53a-49 (a) (2) and 53a-70 (a) (2), one count of risk of injury to a child in violation of § 53-21 (a) (1) and one count of risk of injury to a child in violation of § 53-21 (a) (2). A jury trial was held from June 4 to 10, 2008. The defendant made an oral motion for a judgment of acquittal on June 9, 2008, which was denied by the court. On June

11, 2008, the jury returned a verdict of guilty on all counts, and the defendant was sentenced on September 12, 2008.[5] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court improperly permitted a state's witness to testify as an expert. Specifically, he claims that Martin Geertsma, the director of the pediatric unit at St. Mary's Hospital, was not qualified as an expert witness in the area of sexual abuse and, thus, should not have been permitted to render an opinion concerning the sexual abuse of the victim. Because the defendant did not challenge Geertsma's qualifications at trial, his claim is unpreserved and he seeks review under the plain error doctrine. See Practice Book § 60-5. We reject the defendant's claim.

The following additional facts are relevant to our analysis of the defendant's claim. During the state's case-in-chief, the state called Geertsma to describe the injuries that he observed during his examination of the victim on May 18, 2006. Before describing the injuries, Geertsma testified that he had been the head of the pediatric unit at St. Mary's for twelve years, was board certified in developmental and behavioral pediatrics, had worked as a general pediatrician for many years and had taught general pediatrics as well as developmental and behavioral pediatrics to medical students. Thereafter, Geertsma provided a detailed summary of the victim's injuries that he had observed. He also testified that, to a reasonable degree of medical certainty, the two oval abrasions on the victim's soft palate were "consistent with being caused by an adult male erect penis." The defendant did not object on the record to

[5] The defendant was sentenced to a total effective term of seventy years imprisonment, execution suspended after fifty-five years, and ten years probation.

Geertsma's qualifications, and we have no record that the trial court was ever alerted to the defendant's claim.

On appeal, the defendant argues that Geertsma should not have been permitted to opine as to the cause of the two oval abrasions in the victim's mouth because he was not qualified in the area of sexual abuse. The defendant, however, did not preserve his claim through a proper objection. Therefore, in order to prevail, he relies on the plain error doctrine. See *State* v. *Carneiro*, 76 Conn. App. 425, 429, 820 A.2d 1053, cert. denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003).

Practice Book § 60-5 provides in relevant part: "The [reviewing] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

The plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that [an appellate court] invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the

error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

Our Supreme Court has "clarified the two step framework under which [an appellate court] review[s] claims of plain error. First, [the court] must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of *not debatable*. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . .

"In addition, although a clear and obvious mistake on the part of the trial court is a prerequisite for reversal under the plain error doctrine, such a finding is not, without more, sufficient to warrant the application of the doctrine. Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust. . . . Only if both prongs of the analysis are satisfied can the appealing party obtain relief." (Citations omitted; emphasis in original; internal quotation

marks omitted.) *State* v. *Coward*, 292 Conn. 296, 306–307, 972 A.2d 691 (2009).

Applying these standards, we conclude that the defendant cannot prevail under the plain error doctrine because the action of the trial court did not amount to plain error. Even if we assume, without deciding, that it was improper for the trial court to allow Geertsma to offer an expert opinion in the area of sexual abuse, we do not believe that his testimony "undermined the fairness or integrity of the trial afforded to the defendant"; (internal quotation marks omitted) *State* v. *Carneiro*, supra, 76 Conn. App. 431; or "threaten[s] to erode our system of justice and work a serious and manifest injustice on the [defendant]." *State* v. *Myers*, supra, 290 Conn. 289. Upon careful review of the record, we cannot conclude that "the verdict constituted manifest injustice to the defendant or will lead to diminished confidence in our judicial system." *State* v. *Carneiro*, supra, 431. Accordingly, we reject the defendant's claim.

## II

The defendant next claims that the trial court improperly permitted expert testimony on an ultimate issue of fact. Specifically, the defendant claims that the trial court abused its discretion by allowing Geertsma to opine on whether the injuries to the victim's mouth were consistent with penetration by an adult's erect penis. We disagree.

The portion of Geertsma's testimony that is challenged on appeal is set forth in the following colloquy:

"[The Prosecutor]: To a reasonable degree of medical certainty, is this type of injury [the two oval abrasions on the victim's soft palate] consistent with penile penetration of the mouth?

"[Defense Counsel]: Objection, Judge. That's calling for a conclusion.

"The Court: I understand that, but I'll allow it. You may answer that question, doctor.

"[The Witness]: I believe it is consistent with a forceful penetration and forcing against the skin of a blunt object, probably not hard like a metal object or a piece of wood, because that would have caused more extensive bleeding, and probably more deep linear cuts, and because of the shape and nature, which I can't portray because you can't portray three dimensions here, but this is—this is sort of like [a] steeple in this area.

"As a result, because this sort of—these two walls here come down a bit from where you—from the flap, something would have come in at this area, and forced itself on either side here. That would be the most likely explanation as to injury here. . . .

"Because this part is fairly—this part of the mouth is fairly small in a younger child here, and to get a small object like a toothbrush in there, yes, you could have had an injury if the toothbrush just went right back in there, because it's small, but this had to be wider, much wider and broader.

"[The Prosecutor]: Would an adult male penis be consistent with that type of object that could have caused such injury?

"[Defense Counsel]: Objection, Judge. That's been asked and answered.

"The Court: Well, I don't—I'm going to sustain the objection. I think I'm going to sustain the objection. I think it's been asked and answered, but I'm going to sustain the objection for another reason. You need to rephrase the question.

"[The Prosecutor]: Yes, Your Honor. To a reasonable degree of medical certainty . . . is that type of injury consistent with being caused by an erect adult penis?

"[Defense Counsel]: Objection, Judge. Again, that's calling for a conclusion and Dr. Geertsma has already given his answer into what he thinks could have caused this; a large, blunt object.

"The Court: Is your question it's been asked and answered? Is that your objection, that it's been asked and answered? Because I don't think it has been.

"[Defense Counsel]: It's just—it was twofold.

"The Court: Okay.

"[Defense Counsel]: It's calling for a conclusion and the fact that he's already—he has answered the question because he's already stated some sort of large, blunt object.

"The Court: Objection's overruled. I'm going to allow the question. I don't think it's been asked, I don't think it's been answered yet, so I'm going to allow it. Do you understand the question, doctor? Do you need it to be repeated?

"[The Witness]: Would you repeat the question?

"[The Prosecutor]: Sure. To a reasonable degree of medical certainty, is the type of injury that you saw in [the victim's mouth] consistent with being caused by an adult male erect penis?

"[The Witness]: Yes."

The issue before us is whether the trial court improperly permitted expert testimony on the ultimate issue of fact as to whether the defendant engaged in sexual intercourse with the victim.

We begin by setting forth the applicable standard of review. "[T]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence . . . .

Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Furthermore, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 774, 970 A.2d 108 (2009); see also *State* v. *Perkins*, 271 Conn. 218, 264, 856 A.2d 917 (2004) ("[c]oncerning expert testimony specifically . . . the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed" [internal quotation marks omitted]); *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986) ("[t]he trial court has wide discretion in ruling on . . . the admissibility of [expert witnesses'] opinions").

With regard to opinion testimony, Connecticut Code of Evidence § 7-3 (a) provides in relevant part: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." This court has held that "[a]n expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact. . . . An expert may, however, give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Whitley*, 53 Conn. App. 414, 421, 730 A.2d 1212 (1999). "[A]n

ultimate issue [is] one that cannot reasonably be separated from the essence of the matter to be decided [by the trier of fact]." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 415, 963 A.2d 956 (2009). Therefore, an expert may offer an opinion on an ultimate issue "if the witness has a special skill or knowledge, beyond the ken of the average juror, that . . . would be helpful to the determination of an ultimate issue." *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973). On the other hand, "[i]t is well recognized that testimony on matters which are not beyond the ken of the average juror does not qualify as admissible expert testimony. . . . When inferences or conclusions are so obvious that they could be as easily drawn by the jury as the expert from the evidence, expert testimony regarding such inferences is inadmissible." (Citation omitted.) *State* v. *Iban C.*, 275 Conn. 624, 639, 881 A.2d 1005 (2005).

In sexual assault cases, our Supreme Court and this court have generally allowed expert witnesses to opine as to the cause of a victim's injuries or to provide opinion testimony that a victim's injuries are consistent with sexual abuse, reasoning that such matters are beyond the ken of the average juror. See id. ("[w]e have never stated that . . . expert testimony [that a victim's injury was consistent with sexual abuse] is inadmissible"); *State* v. *Whitley*, supra, 53 Conn. App. 421 ("[e]vidence of the . . . medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness"). For example, in *State* v. *Rodgers*, 207 Conn. 646, 647, 542 A.2d 1136 (1988), the defendant was charged with sexual assault in the first degree in violation of § 53a-70 (a). During the trial, an obstetrician-gynecologist who examined the victim's injuries testified over the defendant's objection that "the fissure suffered by the victim was probably caused by a sharp or quick blow

to the rectum and was consistent with rape by rectal penetration." Id., 651. On appeal, the defendant claimed that the trial court had improperly permitted "expert testimony on an essential element of the crime that was properly an issue for the jury's determination." Id., 650–51. Although recognizing that penetration was an element of the crime of sexual assault in the first degree, the court nevertheless rejected the defendant's claim, stating that "[t]his is precisely the evidentiary circumstance in which we have . . . reaffirmed that experts can give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." (Internal quotation marks omitted.) Id., 652. Similarly, this court has permitted expert testimony in sexual assault cases, reasoning that "the existence or absence of physical injury to a victim's genital or anal area and its relation to a sexual assault is not necessarily an obvious matter within the common knowledge of the average person." *State* v. *Whitley*, supra, 53 Conn. App. 422; see also *State* v. *Luis F.*, 85 Conn. App. 264, 274, 856 A.2d 522 (2004).

In the present case, we do not believe that the trial court abused its discretion by permitting Geertsma to testify that the two oval injuries to the victim's soft palate were consistent with penetration by an adult's erect penis. The state charged the defendant with sexual assault in the first degree in violation of § 53a-70 (a) (2), claiming that he had engaged in fellatio with the victim. This meant that the state had to prove, and the jury had to find, beyond a reasonable doubt that the defendant penetrated the victim's mouth with his penis rather than some other object. See General Statutes § 53a-70 (a) (2).

In order to prove its case, the prosecution offered, among other evidence, testimony that described the extent of the injuries that the victim had sustained in

her mouth, including the two oval abrasions on her soft palate. As we stated previously, however, the average juror was unlikely to understand fully the relationship between the injuries to the victim's mouth and the claim that the defendant had penetrated the victim's mouth with his penis. Therefore, this is not a case in which the "inferences or conclusions [to be drawn from the evidence] are so obvious that they could be as easily drawn by the jury as the expert . . . ." *State* v. *Iban C.*, supra, 275 Conn. 639. Instead, as in *Rodgers*, this is an evidentiary circumstance "where the trier [of facts], in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." (Internal quotation marks omitted.) *State* v. *Rodgers*, supra, 207 Conn. 652; see Conn. Code Evid. § 7-3 (a). As such, we conclude that Geertsma's opinion as to whether the injuries were consistent with being caused by an adult's erect penis "assisted the jury in intelligently assessing the ultimate issue as to whether a sexual assault had occurred." *State* v. *Rodgers*, supra, 652.

We conclude, therefore, that the court did not abuse its discretion by admitting the challenged testimony.

### III

Finally, the defendant claims that the evidence adduced at trial was insufficient to support his conviction of two counts of sexual assault in the first degree and one count of attempt to commit sexual assault in the first degree. Specifically, the defendant claims that the state did not prove beyond a reasonable doubt that he (1) engaged in sexual intercourse with the victim, as required for conviction of the two counts of sexual assault in the first degree, and (2) took a substantial step in a course of conduct planned to culminate in vaginal intercourse with the victim, as required for conviction of the one count of attempt to commit sexual assault in the first degree. We disagree.

We begin by setting forth the applicable standard of review. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Sinclair*, 197 Conn. 574, 576–77, 500 A.2d 539 (1985).

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable

doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489–90, 698 A.2d 898 (1997).

A

We first consider the defendant's claim that the state produced insufficient evidence to prove beyond a reasonable doubt that he engaged in sexual intercourse with the victim.

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." For purposes of this section, sexual intercourse with another person is defined in relevant part as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. . . . Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen." General Statutes § 53a-65 (2). Therefore, in order to convict a defendant of sexual assault in the first degree, the state must prove beyond a reasonable doubt that the defendant penetrated the victim sexually. *State* v. *Rodgers*, supra, 207 Conn. 651; *State* v. *Artis*, 198 Conn. 617, 621, 503 A.2d 1181 (1986).

In his brief on appeal, the defendant contends that the state did not prove the essential element of penetration.

More specifically, the defendant claims that the evidence did not show beyond a reasonable doubt that he engaged in fellatio or anal intercourse with the victim, as charged in the second substitute information. In support of his argument, the defendant relies on the fact that the state did not produce any direct evidence of penetration and claims that the circumstantial testimony was wholly insufficient.[6] We disagree.

As we stated, the state may choose to establish the elements of a crime by direct or circumstantial evidence, or both. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair*, supra, 197 Conn. 576. Moreover, with regard to sexual assault charges, our Supreme Court has specifically recognized that "[w]hether there was actual penetration [is] a question of fact for the jury. . . . Proof of penetration need not take any particular form and may be proved by circumstantial evidence." (Citation omitted.) *State* v. *Artis*, supra, 198 Conn. 621. Thus, the mere fact that the state in this case relied wholly on circumstantial evidence is not, in and of itself, sufficient to support the defendant's argument.

Construing the evidence in the light most favorable to sustaining the jury's verdict, we find that the circumstantial evidence was sufficient to show beyond a reasonable doubt that the defendant engaged in fellatio and anal intercourse with the victim. At trial, the state introduced evidence that showed that the victim had no serious injuries prior to being left alone with the defendant. After the approximate one and one-half hour

---

[6] The defendant also bases his insufficiency of the evidence claim partially on the argument that he advanced in his previous claim, namely, that the court improperly admitted a portion of Geertsma's testimony. Because the court properly admitted Geertsma's testimony, we do not consider that argument.

period that the defendant was alone with the victim, however, the victim sustained serious injuries to her face, mouth, ears, feet, ankles and anal area. Evaluation of these injuries by three medical professionals revealed that the injuries were not consistent with the types of injuries that a child of the victim's age typically would sustain but instead were more consistent with sexual abuse.[7] As the defendant was the only male in the house during the time that the victim sustained the injuries, the jury reasonably could have inferred that the defendant was the source of the injuries.

Additionally, as our Supreme Court has noted: "The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . ." (Internal quotation marks omitted.) *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984). In the present case, the record shows that the defendant lied to the police about numerous facts, including the time he had arrived at H's house and whether he had any contact with the victim. It was only after the police confronted the defendant with the information provided by H that he admitted the truth. In addition to lying to the police, the defendant told H to lie to the police about his name and the time he had arrived at her house on the date of the incident. Therefore, in reaching its decision, the jury could have inferred that the defendant had a guilty state of mind from his false statements to the police and his requests for H to lie to the police.

---

[7] For example, Judith Moskal-Kanz, a pediatric nurse practitioner and forensic examiner specializing in child sexual abuse, was one of the medical professionals who examined the victim on May 18, 2006. At trial, when asked whether the injuries to the victim's mouth and anal area were "naturally occurring injur[ies]," Moskal-Kanz testified that, to a reasonable degree of medical certainty, the injury to the victim's anal area was caused by "[p]enile penetration" and that the injuries to the victim's mouth were caused by "[o]ral penetration."

Accordingly, we conclude that the jury reasonably could have concluded that the defendant engaged in fellatio and anal intercourse with the victim on the basis of the evidence adduced at trial and the inferences reasonably drawn therefrom.

## B

We next consider the defendant's claim that the state produced insufficient evidence to prove beyond a reasonable doubt that he took a substantial step in a course of conduct planned to culminate in vaginal intercourse with the victim.

"In order to convict the defendant of [attempt to commit] sexual assault in the first degree in violation of §§ 53a-70 and 53a-49 (a) (2), the state must have proven beyond a reasonable doubt that the defendant acted with the specific intent to commit sexual assault in the first degree which in turn included the intent to have *sexual intercourse* . . . and that the defendant took a substantial step in a course of conduct planned to culminate in his commission of the crime. . . .

"Intent may be inferred from the conduct of the accused. . . . The intent of the actor is an issue to be determined by the trier of fact. . . . Likewise, what constitutes a substantial step in any given case is a matter of degree and a question of fact for the jury. . . . The substantial step must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Milardo*, 224 Conn. 397, 403–404, 618 A.2d 1347 (1993).

After our review of the record, we conclude that there was sufficient evidence for the jury to find the defendant guilty, beyond a reasonable doubt, of attempt to commit

sexual assault in the first degree. The state presented evidence that the defendant requested to be left alone with the victim and then spent approximately one and one-half hours alone with the victim. Furthermore, the evidence showed that the victim had generalized bruising in her genital area, indicative of a forceful compression, and had vaginal, labial and hymeneal bruising that was consistent with a direct forceful injury from an erect adult penis. On the basis of this evidence and the fact that the defendant was the only male present when the injuries occurred, the jury reasonably could have found that the defendant had the specific intent to engage in vaginal intercourse with the victim and had taken a substantial step in a course of conduct planned to culminate in vaginal intercourse with her.

Accordingly, we conclude that the jury reasonably could have concluded that the defendant took a substantial step in a course of conduct planned to culminate in sexual intercourse with the victim on the basis of the evidence adduced at trial and the inferences reasonably drawn therefrom.

The judgment is affirmed.

In this opinion the other judges concurred.